Simon Abrahams et al., Appellants *v.* Wallenpaupack Area School District, Appellee.

638

Argued April 10, 1980, before President Judge
CRUMLISH and Judges BLATT and WILLIAMS, JR., sitting
as a panel of three.

*Randolph T. Borden, Borden & Leventhal,* for appellants.

*Warren D. Utermahlen—Krawitz & Ridley, P.C.,* for appellee.

OPINION BY JUDGE WILLIAMS, JR., November 21, 1980:

This is an appeal by numerous co-parties from an order of the Court of Common Pleas of Pike County dismissing their complaint in equity for injunctive relief against the Wallenpaupack Area School District. More technically, they appeal from the lower court's dismissal of their exceptions to the decree nisi.

This case was born when the School Board of the Wallenpaupack Area School District (School District) on June 13, 1977, voted to discontinue school bus service on the private, interior roads of a private residential development named "Hemlock Farms."[1] As a result of that decision, the school children of Hemlock Farms would, commencing with the fall term of 1977,

---

[1] The vote was to discontinue service on or across *all private roads.*

be picked up and discharged at the entrances to the development. Concerned parents sued to enjoin the School District from discontinuing the previous service on the interior roads, or to obtain mandatory relief for the restoration of the service.

Between 1972 and 1977 the School District had provided such service to Hemlock Farms. However, one of the reasons underlying the School Board's decision to discontinue it was a concern that other private developments in the School District could insist upon equal service, and the School District would be financially unable to comply.

In dismissing the parents' complaint in equity the lower court determined that the School Board had not committed an abuse of discretion or error of law in its decision to discontinue the service, and that no judicial intervention was warranted. We agree.

The legal consideration that is central to this case is Section 1361 of the Public School Code of 1949.[2] In pertinent part that section states:

> The board of school directors in any school district *may*, out of the funds of the district, provide for the free transportation of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled. . . . (Emphasis added.)

The power granted to school districts under this section is plenary, absent a showing of bad faith or abuse of discretion. *Roberts v. School District of Scranton,* 462 Pa. 464, 341 A.2d 475 (1975).

Courts will not interfere with a school board's exercise of its discretionary power unless the action was based on a misconception of law, ignorance through lack of inquiry into the facts necessary for an intelli-

---

[2] Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §13-1361.

gent judgment, or unless the action is the result of arbitrary will or caprice. *Zebra v. Pittsburgh School District,* 449 Pa. 432, 296 A.2d 748 (1972); *Hibbs v. Arensberg,* 276 Pa. 24, 119 A. 727 (1923).

The appellants assert that the School Board's decision to stop serving the interior roads of Hemlock Farms was based on a misconception of law. Specifically, the appellants argue that the Board was incorrect in its opinion that constitutional and other legal considerations would compel the School District to provide equal service to other private developments. In order for us to conclude that the school authorities were incorrect in that opinion, we would have to decide the constitutional ramifications of the School District's *not* providing the same service to all private developments. Neither the record nor the briefing of this case, in its present posture, would enable this Court to properly decide that question. Therefore, it cannot be declared that the School Board's opinion was incorrect or a misconception of law. In that regard, we cannot be unmindful of the vast stream of litigation and decisions concerning the classifications governmental units may follow in allocating benefits and services to citizens. For the School Board to mold its action in light of that legal realty does not constitute bad faith or an abuse of discretion.

It is only where a school board transcends the limits of its legal discretion that it is amenable to the injunctive process of a court of equity. *Roberts, supra; Landerman v. Churchill Area School District,* 414 Pa. 530, 200 A.2d 867 (1964); *Spann v. Joint Boards of School Directors,* 381 Pa. 338, 113 A.2d 281 (1955). The burden of showing such an abuse is a heavy one and rests with the party seeking the injunction. *Zebra, supra; Landerman, supra.* The appellants' generalized disagreement with the School Board's conception of constitutional law does not satisfy that burden, es-

pecially when that conception is at least facially reasonable.

The appellants also assert that it is mandatory for the School District to provide the bus service here in question, by force of Section 1362 of the Public School Code.[3] That assertion follows from their allegation that the interior roads of Hemlock Farms present a hazard to the safety of the school children.

In pertinent part, Section 1362 provides as follows:

The free transportation of pupils, as required or authorized by this act, or any other act, *may* be furnished by using either school conveyances, private conveyances, or electric railways, or other common carriers, *when* the total distance which any pupil must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one-half (1½) miles, *and when* stations or other proper shelters are provided for the use of such pupils ... *and when* the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, *as so certified by the Department of Transportation.* ... (Emphasis added.)

To construe Section 1362 itself as imposing any obligation on a school board would require us to ignore the word "may." This Section of the Public School Code is a complement to other sections which permit or require the provision of free transportation. Section 1362 does no more than enumerate the means of transportation which a school board may employ under certain circumstances. In sum, Section 1362 does not mandate free bus service on the interior roads of Hemlock Farms. Furthermore, even if the "hazard" clause of Section 1362 did create such a duty, that duty would

---

[3] *As amended,* 24 P.S. §13-1362.

not arise unless the hazard was certified by the Department of Transportation. There has been no such certification in this case.

Finally, the appellants attack the Board's decision as being based on ignorance through a lack of inquiry into the facts necessary to form an intelligent judgment. The record refutes that contention. The record indicates that, in addition to the legal issue of supplying the bus service to Hemlock Farms, the School Board additionally considered such factors as costs, traveling time, and conditions on the roadways in the School District. As we pointed out in *Allen v. Uniontown Area School District*, 4 Pa. Commonwealth Ct. 183, 285 A.2d 543 (1971), the process leading to the actual exercise of discretion cannot be unending.

For the reasons set forth, we affirm the order of the court below.

ORDER

AND Now, the 21st day of November, 1980, the order of the Court of Common Pleas of Pike County entered May 31, 1979, at No. 5 of May Term 1977, is affirmed.

President Judge CRUMLISH concurs in the result only.