PUNXSUTAWNEY AREA SCHOOL
DISTRICT, Petitioner,

v.

Gary KANOUFF and Donna Kanouff, individually, and as parents and natural guardians on behalf of Joseph Kanouff, Respondents.

PUNXSUTAWNEY AREA SCHOOL
DISTRICT, Petitioner,

v.

Delbert DEAN and Dottie Dean, individually, and as parents and natural guardians on behalf of Melissa Dean, Respondents.

Commonwealth Court of Pennsylvania.

Argued June 8, 1995.
Decided Aug. 4, 1995.

David L. Young, for petitioner.

Edward J. Feinstein, for respondents.

Before McGINLEY and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

This is a consolidated appeal by Punxsutawney Area School District (District) from two orders entered by the Special Education Due Process Appeals Review Panel (Appeals Panel) reversing the decision of the Special Education Hearing Officer (Hearing Officer) denying relief to Delbert and Dottie Dean, individually, and as parents and natural guardians of Melissa Dean, and to Gary and Donna Kanouff, individually, and as parents and natural guardians on behalf of Joseph Kanouff (collectively, Respondents). We affirm, as modified.

In the fall of 1993, Delbert and Dottie Dean, (the Deans), notified the District of their concerns for the health of their daughter, Melissa, a gifted student with a special Individualized Educational Program (IEP) in grade 7 of the District's junior high school. They complained that Melissa was suffering respiratory and associated problems because of her attendance at classes in the Jefferson Building (Building), one of the three buildings comprising the junior high complex.

The Deans requested that the District move Melissa to another building until she could be evaluated and environmental tests could be performed in the Building. The District refused this request but placed Melissa in homebound instruction from October 29, 1993 to November 29, 1993.

Melissa returned to school after this period but continued to suffer from the same symptoms, accumulating significant school absences, which were excused by the District. Melissa was examined by a pediatrician specializing in infectious diseases, who contacted the District on three occasions (December 20, 1993, December 22, 1993 and January 26, 1994) recommending first, that Melissa receive instruction in another building of the complex, and then later requesting homebound instruction. These requests were denied, and consequently, Melissa did not receive any instruction from December until February 21, 1994, when the Deans were given a Notice of Recommended Assignment (NORA) placing Melissa in homebound instruction. The NORA was to be retroactive to January 3, 1994 although Melissa had not received any instruction during that period. The parents refused to sign the NORA and requested a due process hearing for April. In late April, a study of indoor air quality was conducted by a certified industrial hygienist, concluding that there were no specific environmental factors which would cause health problems.

The hearing was held over six (6) sessions beginning in April and ending July 18, and in a decision rendered on November 10, 1994, the Hearing Officer concluded that Melissa had neither a physical nor a mental disability which substantially limited her participation in or access to schooling, and further denied a link between Melissa's educational environment and her physical symptoms. In addition, the Hearing Officer held that there was no specific evidence which indicated a substantial impact upon Melissa's learning.

In March, 1994, Gary and Donna Kanouff (the Kanouffs) also informed the District of

their concern that their son, Joseph, who has a diagnosis of specific learning disabilities, and was in the seventh grade in November and December of 1993 when he complained of headaches, congestion, stomach aches and other ailments, suffered health problems because of his attendance at classes in the Building. The District did not respond to the Kanouff's initial letter of March 7, 1994. The Kanouffs consulted an allergist, who wrote to the District recommending that Joseph be removed from the Building on an experimental basis to determine if the Building or stress was causing his health problems. Subsequently, the District informed the Kanouffs by phone on March 31, 1994 that the allergist's recommendation was not acceptable and that Joseph should continue his classes in the Building.

After numerous meetings, letters and phone calls throughout March and April, during which time Joseph did not attend school and the District continued to be opposed to both homebound instruction or instruction outside the Building, the District informed the Kanouffs that Joseph would be expected to return to school on April 25, 1994 to follow his original class schedule. When Joseph returned to school he went home sick mid-morning, and did not return to the District junior high school for the rest of the school year. The Kanouffs refused to sign a subsequent IEP which would have had the practical effect of requiring Joseph to spend the majority of his school day alone in the guidance office. The Kanouffs requested a due process hearing, and during the pendency of the hearing the Hearing Officer issued an interim order for homebound instruction. However, this order was not complied with, and no instruction was provided. The Kanouffs enrolled Joseph in a private school for the 1994–1995 school year.

On November, 10, 1994 the Hearing Officer issued his decision which concluded that Joseph should continue as a grade 8 student in regularly scheduled classes, including those in the Building, because he had neither a physical nor mental disability which substantially limited his participation in or access to his school program. Although the Hearing Officer concluded that there was some medical evidence of disability, it was not linked to the Building, with no substantial impact on his learning, and therefore he was not entitled to compensatory education.

Respondents filed exceptions, and the Appeals Panel reversed finding in both cases that the Hearing Officer had erred as a matter of law by failing to consider the District's responsibility to provide the procedural and substantive safeguards required under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1491, and under the state laws mandated by the IDEA, 22 Pa.Code §§ 14.1–14.74. The Appeals Panel specifically referenced the notice provisions of 20 U.S.C. § 1415,[1] 34 C.F.R. §§ 300.504–505, and 22 Pa.Code § 14.61, as well as those provisions providing for a screening process and a multi-disciplinary

---

1. § 1415. Procedural safeguards

(a) Establishment and maintenance. Any State educational agency, any local educational agency, and any intermediate educational unit which receives assistance under this part shall establish and maintain procedures in accordance with subsection (b) through subsection (e) of this section to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education by such agencies and units.

(b) Required procedures; hearing. The procedures required by this section shall include, but shall not be limited to—

(A) an opportunity for the parents or guardian of a handicapped child to examine all relevant records with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education to such child, and to obtain an independent educational evaluation of the child;

\* \* \* \* \* \*

(C) written prior notice to the parents or guardian of the child whenever such agency or unit—

(i) proposes to initiate or change, or

(ii) refuses to initiate or change,

the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to the child;

(D) procedures designed to assure that the notice required by clause (C) fully inform the parents or guardian, in the parents' or guardian's native language, unless it clearly is not feasible to do so, of all procedures available pursuant to this section; and

(E) An opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.

evaluation to identify the need, if any, for special education. 34 C.F.R. § 300.532; 22 Pa.Code. §§ 14.21(b), 14.23, 14.24.

Thus, in the case of Melissa Dean, the Appeals Panel held that once the District knew or suspected that a potentially handicapping condition existed, it had the duty under state and federal law to provide notice to the Deans specifically containing a description of the action proposed or refused by the District, and to include a description of the data used by the District as a basis for its decision, as well as any other factors relevant to the District's actions. The District also failed to evaluate Melissa, as required by state and federal law, for the purposes of determining the appropriate level of intervention, if any. The Appeals Panel, therefore, ordered an appropriate evaluation of Melissa, and appropriate notice, and compensatory education of not less than 4 days per week to make up for the all the time that Melissa was in homebound instruction from February, 1994, until the end of the year. This compensatory education could take the form of summer courses or enrichment.

In the case of Joseph Kanouff, the Appeals Panel similarly held that although the Hearing Officer concluded there was no violation of Chapter 15, regarding the protection of handicapped students, 22 Pa.Code §§ 15.1–15.11, it failed to consider the District's obligations under Chapter 14, (22 Pa.Code §§ 14.1–14.74) and under federal law (the IDEA), to both provide notice and to evaluate Joseph's health impairments once it knew that a potentially handicapping situation existed.

The Appeals Panel held that because of the District's failure to provide notice, its failure to constitute a multi-disciplinary evaluation, or to develop a new IEP once it had reason to suspect a new handicapping condition (Joseph was already eligible for special education because of learning disabilities), Joseph was entitled to compensatory education for the District's knowing failure to provide an appropriate educational placement. *Lester H. v. Gilhool,* 916 F.2d 865 (3rd Cir.1990),

*cert. denied, sub. nom. Chester Upland School District v. Lester H.,* 499 U.S. 923, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991). The Appeals Panel found that the Kanouffs' action in removing Joseph to a private school was reasonable, given the District's stonewalling and outright refusal to comply with the Hearing Officer's interim order, and therefore, the parents were entitled to tuition reimbursement and compensatory education for the time that Joseph was placed in homebound instruction.

The District raises the same two issues on appeal in both the Dean and Kanouff cases. They are: (1) whether after the Hearing Officer ruled that the student had no physical or mental disability, and the Appeals Panel did not overrule this finding, was it not error for it nonetheless to order further notice and evaluation, and (2) whether the Appeals Panel erred in concluding that the District had not adequately complied with procedures regarding notice and evaluation prior to the ultimate due process determination that the student has no physical or mental disability.

This Court's scope of review from decisions of the Appeals Panel is limited to a determination of whether the adjudication is supported by substantial evidence, errors of law were committed, or constitutional rights were violated. 2 Pa.C.S. § 704; *Conrad Weiser Area School District v. Department of Education,* 145 Pa.Commonwealth Ct. 452, 603 A.2d 701 (1992).

■ In essence, the District's first argument is that it is improper for an Appeals Panel to order further evaluation, notice and compensatory education as required by the IDEA or mandated by 22 Pa.Code Chapter 14 if the Hearing Officer has found that the student has no physical or mental disability. The District contends that because there are no substantive differences between 22 Pa. Code Chapter 15 and 22 Pa.Code Chapter 14 in respect to the definition of physical or mental disability, and because the Hearing Officer found that the students were not disabled, the Appeals Panel elevated form over substance in reversing the Hearing Officer, because of its failure to consider the IDEA or Chapter 14 in its decision.

We disagree because the District's argument overlooks the crucial role Chapter 14 and the IDEA play in guaranteeing the completeness of the information relied on by the Hearing Officer in making his decision. The purpose of Chapter 14, in pertinent part, is to specify how the Commonwealth will meet its obligation to both suspected and identified exceptional students and to provide the appropriate, quality education services. 22 Pa. Code § 14.2(a). That obligation entails an evaluation and screening process, including a multi-disciplinary evaluation, which is mandated by both state and federal law. Thereafter, the District must develop a written plan for the appropriate education for the student, which must be in the least restrictive environment, in order to guarantee a free appropriate public education (FAPE) to the child. 20 U.S.C. § 1412. All along, the parents must be notified of the basis for the district's actions, including a description of each evaluation procedure, type of test, record or report, or other relevant factors.

These procedures were not followed and no evaluation was made. In the case of Melissa Dean, the Appeals Panel found that despite Melissa's numerous "excused" absences, when it was clear that she could not be benefitting from regular schooling, the District ignored her request for a change in placement, but then later recommended homebound instruction, all without giving notice of the reasons for this placement or the data relied on, and without showing whether it was an appropriate change in educational placement in the least restrictive environment, as required by federal and state law. 22 Pa.Code §§ 14.41–14.42; 34 C.F.R. 300.503.

■ In the case of Joseph Kanouff, the Appeals Panel found that the District failed to evaluate Joseph, and seemingly ignored any medical information and then claimed it was not credible. Therefore, we hold that the Appeals Panel properly held that the Hearing Officer erred in failing to order compensatory education, evaluation and proper notice,[2] in violation of the IDEA and 22 Pa.Code Chapter 14.

■ Moreover, the District's argument that the Appeals Panel did not give proper deference to the Hearing Officer's findings is without merit. Pennsylvania's implementation of the IDEA makes the Appeals Panel the ultimate fact-finder.[3] The Appeals Panel is not bound by the decision of the hearing examiner, and its scope of review is not restricted to determining if there is substantial evidence to support the hearing examiner's findings. Rather, it is charged with making an independent examination of the evidence of record, subject to review by this Court. *Big Beaver Falls Area School District v. Jackson*, 150 Pa.Commonwealth Ct. 268, 615 A.2d 910 (1992) (*Big Beaver Falls I*); *Centennial School District v. Commonwealth Department of Education*, 94 Pa.Commonwealth Ct. 530, 503 A.2d 1090, aff'd 517 Pa. 540, 539 A.2d 785 (1988). Thus, here, the Appeals Panel did not err in mak-

---

**2.** There is some question whether some of the relief ordered in these cases is moot. It is not clear if Melissa Dean attended the District junior high in the 1994–1995 year, or whether she was ever evaluated after the Appeals Panel decision. Given that she was an eighth grade student in the 1994–1995 school year, which has since ended, she will no longer be in the junior high school complex and will not attend classes in the Building which allegedly impaired her health. Therefore, the evaluation and procedural safeguards ordered to determine whether her health condition allegedly caused by exposure to the Building constitutes a handicapping condition would now be unnecessary, if they have not already taken place. However, she still retains the right to compensatory education which the Appeals Panel stated could take the form of summer programming or other appropriate enrichment programs.

In the case of Joseph Kanouff, the Appeals Panel ordered compensatory education which may consist of summer programming or other appropriate programming, as well as reimbursement for out-of-pocket expenses related to private schooling for the period commencing September 9, 1994, and lasting until such time as the District convened a proper multi-disciplinary evaluation and developed an agreed upon IEP. Joseph Kanouff was also an eighth grade student in 1994–1995, and therefore, for the same reasons as Melissa Dean, the evaluation and IEP ordered would now be unnecessary. However, he still has a right to compensatory education as well as reimbursement for private school education.

**3.** 20 U.S.C. § 1415(c).

ing its own independent review of the facts, and reversing the decision of the hearing examiner.

The District further argues that the award of compensatory education was inappropriate because both Melissa Dean and Joseph Kanouff were given homebound instruction and their grades and educational progress remained good throughout the periods involved. However, as we held above, in failing to implement the evaluation, notice and other procedural requirements under the IDEA and 22 Pa.Code Chapter 14, the District failed to provide an appropriate educational placement, as required by 20 U.S.C. § 1412, after it was notified of these students' potentially handicapping conditions.

■ The appropriate remedy, when a student's statutory rights under the IDEA are violated, is compensatory education. *Big Beaver Falls Area School District v. Jackson*, 155 Pa.Commonwealth Ct. 219, 624 A.2d 806, *appeal denied*, 535 Pa. 676, 636 A.2d 635 (1993) (*Big Beaver Falls II*). Accordingly, we have held that when a school district did not complete a multi-disciplinary evaluation, and failed to take action promptly and involve parents and teachers in the development of an IEP, compensatory education was appropriate. *Big Beaver Falls I*. Similarly, it was held by the Third Circuit Court of Appeals that an Appeals Panel's award of thirty months of compensatory education was the proper remedy when a school district failed to provide an appropriate education for a mentally retarded boy. *Lester H. v. Gilhool*.

■ Thus, here, the award of compensatory education to Melissa Dean for the period from February, 1994, until the end of the school year, which was the time she spent in homebound instruction without benefit of evaluation or procedural due process under the IDEA, was entirely appropriate, as such relief cures the deprivation of her statutory rights to an appropriate education. *Gilhool*, citing, *Miener v. State of Missouri*, 800 F.2d 749 (8th Cir.1986).

■ The award of compensatory education to Joseph Kanouff, for the period he was in homebound instruction, is equally justified, as was the reimbursement for private schooling for the period commencing September 9, 1994 and lasting until a proper multi-disciplinary evaluation was convened, and an IEP was developed which was mutually agreeable.[4] Tuition reimbursement constitutes appropriate relief under the IDEA because it merely requires the District to belatedly pay expenses that it should have paid all along. *Gilhool, citing, School Committee of Burlington v. Department of Education*, 471 U.S. 359, 370–371, 105 S.Ct. 1996, 2002–2003, 85 L.Ed.2d 385 (1985). Thus, we find no merit to the District's argument that compensatory education was not justified.

Finally, the District asserts that no additional procedures were necessary because the parents' rights were equally well-met by the adversarial due process hearing, which is guaranteed in 22 Pa.Code 15.8, and draws on the rules governing hearings found in Chapter 14, (22 Pa.Code Chapter 14.64(a)–(1), (n), and (o)). Such hearings, it is argued, may be used to determine and evaluate the need for special education and the correct placement of a student, and the procedures are so similar that it should make no difference that Chapter 14 was not considered by the Hearing Officer. We disagree.

■ In regard to Joseph Kanouff, the Appeals Panel found that there is no question that the District, for example, failed to follow the requirements as specified in 22 Pa.Code Chapter 14, which would entail organizing a multi-disciplinary evaluation and developing an IEP once the District had reason to suspect that Joseph had a new handicapping situation. In regard to Melissa Dean, it found that the District knowingly failed to act when it first became aware that Melissa had a health impairment that was affecting her ability to benefit from her educational program. We hold that there is substantial evidence to support these findings and related conclusions. Moreover, the Appeals Pan-

---

**4.** We add the caveat that this period cannot last past the end of junior high school when Joseph would no longer have classes in the Building.

el did not rule that the Hearing Officer mishandled the hearing itself, or that the District denied the parents their rights to a due process hearing. Rather, what was denied were the rights to an evaluation process, and notice which would guarantee meaningful parental input into the information gathering process prior to the hearing. The IDEA and Chapter 14, emphasize procedural safeguards to ensure parental participation in the administrative process, and thus the due process hearing cannot suffice for the District's earlier failures to follow the statutorily mandated procedures and provide appropriate placement as required by the IDEA and related state law. *Big Beaver Falls I.*

Accordingly, we affirm the order of the Appeals Panel granting compensatory education to Melissa Dean and Joseph Kanouff. We also affirm the Appeals Panel order reimbursing the Kanouffs for their out-of-pocket expenses for private school tuition for the period commencing September 9, 1994 and lasting until such time as the District convened a multi-disciplinary evaluation and developed an agreed upon IEP and NORA for him. However, we modify this order to the extent that such reimbursement may not extend beyond Joseph's last year of junior high school.

### ORDER

AND NOW, this 4th day of August, 1995, the order of the Special Education Due Process Appeals Review Panel in the above-captioned matter is affirmed, as modified, in accordance with the foregoing opinion.