**DELAWARE COUNTY INTERMEDIATE UNIT, Petitioner,**

v.

**JONATHAN S., by and through his parents, Mr. and Mrs. Walter S., Respondents.**

Commonwealth Court of Pennsylvania.

Argued June 12, 2002.

Decided Oct. 29, 2002.

Andria L. Borock, Huntington Valley, for petitioner,

Judith A. Gran, Philadelphia, for respondent.

BEFORE: McGINLEY, J., SIMPSON, J., and MIRARCHI, JR., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Delaware County Intermediate Unit (DCIU) appeals from an order of the Special Education Appeals Panel (Panel) which affirmed an order of a hearing officer. The hearing officer found that DCIU was financially responsible for the pre-school placement of an early intervention eligible student afflicted with cerebral palsy. The due process hearing convened before the hearing officer was requested by Jonathon S., by and through his parents, Mr. and Mrs. S. (collectively, Student). We reverse.

Student is a pre-school aged child diagnosed with cerebral palsy and concomitant orthopedic disabilities. Prior to age three, Student received early intervention services under Part C of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1431–1445, as an infant and toddler with disabilities. Student received those services pursuant to an Individualized Family Services Plan (IFSP) through the Delaware County Department of Human Services (Department). In January 2001, as Student approached the age of three, the Department referred him to DCIU for a multidisciplinary evaluation (MDE) to determine Student's eligibility for special education services funded by the Pennsylvania Department of Education and to assist in planning for his programmatic needs.

DCIU thereafter issued a Comprehensive Evaluation Report (CER) in which the MDE team recommended further early in-

tervention services [1] for Student. DCIU's CER recommended eligibility for early intervention services and supplemental intervention. The CER team reported that Student needs specific physical skills in classroom-related tasks "to function successfully in a variety of settings, including the home, school and community." Reproduced Record (R.R.) at 66a. At a subsequent Individualized Education Program (IEP) meeting on January 17, 2001, the IEP team determined that Student was exceptional and in need of specially designed instruction. R.R. at 70a. DCIU further recommended that Student receive "supplemental intervention" special education services. R.R. at 67a.

As a result of its evaluations, DCIU offered Student a program including two hours of weekly physical therapy, one hour of weekly occupational therapy, and .1 hours of weekly itinerant educational service. R.R. at 71a. Additionally, DCIU offered Student a personal care assistant when enrolled in pre-school and further offered help in selecting and funding a preschool. *Id.*

Student thereafter requested that DCIU fully fund his placement into an appropriate pre-school program, which request DCIU denied. DCIU declined Student's request to be placed in a preschool program with typical peers where he could receive intervention in the regular classroom, on the grounds that it does not fund such programs for children with Student's needs. R.R. at 52a. That refusal was made pursuant to the policies set forth in a DCIU booklet, which defines two types of programs in which eligible children are educated with children who do not have disabilities: Integrated Classroom–Based Services, and Inclusion Programs. R.R. at

51a–52a. DCIU does not offer those programs directly, and will only fund those programs if (1) the child's needs include severe cognitive, communication or social delays (2) the child would otherwise be eligible for a specialized classroom, and, (3) the child's IEP includes goals, objectives and specially designed instruction in the areas of cognition, communication or social skills. *Id.* If the child does not meet those criteria, the costs of the program are the responsibility of the family. *Id.*

Student subsequently requested a hearing on the issue of DCIU's legal responsibility to fully and completely fund Student's pre-school program. The parties agreed that the facts of this case were undisputed. After oral arguments of counsel, the hearing officer, by order dated August 29, 2001, ordered DCIU to provide Student with a Free and Appropriate Public Education (FAPE), as opposed to solely providing appropriate early intervention services, as DCIU has offered. Opinion of the Hearing Officer, pp. 5, 14. The hearing officer further ordered DCIU to fully fund Student's attendance in an appropriate pre-school program for the 2001–2002 school year and to delineate the specially designed instruction necessary to address Student's needs in relation to his physical disability taking into account the importance of peer relationships, peer interaction, and his need to be able to learn and function as part of a group in a variety of settings including pre-school. *Id.*

DCIU filed exceptions to the hearing officer's decision with the Panel, which affirmed by order dated October 17, 2001. DCIU now timely appeals that order of the Panel to this Court.

---

1. The DCIU Early Intervention program serves children ages three to five from all

Delaware County School Districts.

■ This Court's scope of review of decisions of the Panel is limited to a determination of whether the adjudication is supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Punxsutawney Area School District v. Kanouff*, 663 A.2d 831 (Pa.Cmwlth.1995).[2]

2. Student argues that this Court lacks jurisdiction to hear the instant appeal because the order of the hearing officer was not appealed to this Court within 30 days of its issuance. DCIU first timely filed exceptions to the hearing examiner's report, which were heard by the Panel. DCIU timely appealed the Panel's order to this Court. Section 14.162(*o*), relied on by Student does not support student's argument that the instant appeal was untimely filed.

3. The Regulation at 34 C.F.R. § 300.7, provides in relevant part:

(a) General.

(1) As used in this part, the term child with a disability means a child evaluated in accordance with §§ 300.530–300.536 as having mental retardation, a hearing impairment including deafness, a speech or language impairment, a visual impairment including blindness, serious emotional disturbance (hereafter referred to as emotional disturbance), an orthopedic impairment, autism, traumatic brain injury, an other health impairment, a specific learning disability, deaf-blindness, or multiple disabilities, and who, by reason thereof, needs special education and related services.

(2)(i) Subject to paragraph (a)(2)(ii) of this section, if it is determined, through an appropriate evaluation under §§ 300.530–300.536, that a child has one of the disabilities identified in paragraph (a)(1) of this section, but only needs a related service and not special education, the child is not a child with a disability under this part.

(ii) If, consistent with § 300.26(a)(2), the related service required by the child is considered special education rather than a related service under State standards, the child would be determined to be a child with a disability under paragraph (a)(1) of this section.

(b) Children aged 3 through 9 experiencing developmental delays. The term child with a disability for children aged 3 through 9 may, at the discretion of the State and LEA and in accordance with § 300.313, include a child—

(1) Who is experiencing developmental delays, as defined by the State and as measured by appropriate diagnostic instruments and procedures, in one or more of the following areas: physical development, cognitive development, communication development, social or emotional development, or adaptive development; and

(2) Who, by reason thereof, needs special education and related services.

(c) *Definitions of disability terms.* The terms used in this definition are defined as follows:

\* \* \*

(8) Orthopedic impairment means a severe orthopedic impairment that adversely affects a child's educational performance. The term includes impairments caused by congenital anomaly (e.g., clubfoot, absence of some member, etc.), impairments caused by disease (e.g., poliomyelitis, bone tuberculosis, etc.), and impairments from other causes (e.g., cerebral palsy, amputations, and fractures or burns that cause contractures).

\* \* \*

(10) Specific learning disability is defined as follows:

(i) General. The term means a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, that may manifest itself in an imperfect ability to listen, think, speak, read, write, spell, or to do mathematical calculations, including conditions such as perceptual disabilities, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia.

(ii) Disorders not included. The term does not include learning problems that are primarily the result of visual, hearing, or motor disabilities, of mental retardation, of

DCIU first argues that the Panel erred by affirming the hearing officer's conclusion that Student was eligible for publicly funded pre-school placement pursuant to the IDEA, 20 U.S.C. § 1419.

■ Pursuant to the regulations promulgated at 34 C.F.R. § 300.7,[3] IDEA re-

quires that a FAPE be provided to children who fall within IDEA's definition of a child with a disability. While children with cerebral palsy can be considered to be disabled under IDEA, this definition is limited by the further requirement that the student require specially designed instruction and related services. 34 C.F.R. § 300.7.

■ For DCIU to be responsible for providing a FAPE under 20 U.S.C. § 1419(9K), a student must show that (1) Pennsylvania received a pre-school grant, and; (2) that the student is a child with a disability as defined in 20 U.S.C. § 1401(3)(B).[4] Under Section 1401, to be a child with a disability a student must be experiencing a developmental delay, and by reason thereof need special education and related services. Special education is defined by Section 1401 as specially designed instruction, provided at no cost to the parents, to meet the unique needs of the child with the disability. 20 U.S.C. § 1401(25).[5]

■ In short, for a student to be eligible under IDEA's definition of disability, and for DCIU to be responsible for fully funding a student's pre-school needs under IDEA, that student must be found to be in need of specially designed instruction.

■ In the case *sub judice*, neither party disputes that Student has a physical disability that affects his fine and gross motor skills, and that his cognitive skills are age appropriate. Additionally, the parties agree that Pennsylvania has received a pre-school grant as required by 20 U.S.C. § 1419. The record in this case, however, is bereft of any evidence that Student's gross and fine motor development delays require the adapting of content, methodology, or delivery of instruction to address Student's unique needs. Because there is no evidence of record that Student requires such specially designed instruction, he does not meet the controlling definition of a child with a disability articulated in 20 U.S.C. § 1401(3)(B) and (25), and is therefore ineligible for a FAPE.

The hearing officer, in concluding that Student was eligible under the definitions articulated above, was unable to cite to any substantial evidence of record indicating that Student required any specially designed instruction. The sole support mentioned by the hearing officer in support of his conclusion was DCIU's failure to conduct more tests on Student than it did in its evaluation,[6] an accompanying implica-

---

emotional disturbance, or of environmental, cultural, or economic disadvantage.

**4.** 20 U.S.C. § 1401(3)(B) states:
(3) Child with a disability—
(B) Child aged 3 through 9
The term "child with a disability" for a child aged 3 through 9 may, at the discretion of the State and the local educational agency, include a child—
(i) experiencing developmental delays, as defined by the State and as measured by appropriate diagnostic instruments and procedures, in one or more of the following areas: physical development, cognitive development, communication development, social or emotional development, or adaptive development; and

(ii) who, by reason thereof, needs special education and related services.

**5.** 20 U.S.C. § 1401(25) states:
(16) The term 'special education' means specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a child with a disability, including—
(A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and
(B) instruction in physical education.

**6.** The Hearing Officer does not cite to, and we are unaware of, any regulation mandating more testing than was performed in this case by DCIU.

tion that such further testing would reveal such a need on Student's part, and a broad generalization that "conventional wisdom" regarding children with cerebral palsy and their development reveals such a need. R.R. at 181a–186a. We agree with DCIU that the Hearing Officer's findings and concomitant conclusions that Student is therefore disabled are subjective, and unsupported by any evidence of record.

■ The hearing officer does cite, and Student argues in the instant appeal, that DCIU's own IEP team conclusively found that Student was in need of specially designed instruction when that team checked a box on Student's IEP form indicating the same. R.R. at 70a. We do not agree that the checking of that box, without any further evidence of record, supports a finding or conclusion that Student is in need of specially designed instruction. DCIU argues, and we agree, that it is the evidence of record, and not the unsupported clerical act of checking a box on a form, that controls this issue when presented for our review.[7] Student is able to cite to, and our review of the record reveals, no other evidence of record besides the checked box that Student is in need of specially designed instruction. The special needs of the child are what determines his entitlement to funded services, but neither the hearing officer, the Panel, nor Student have cited to any actual substantive evidence that Student requires specially de-

signed instruction, i.e. the adaptation of the content, methodology, or delivery of instruction to address the unique needs of the child that result from the child's disability. As such, the Panel erred as a matter of law in affirming the hearing officer's order in the absence of such substantial evidence. *Kanouff.*

■ DCIU next argues that the Panel erred as a matter of law by affirming the hearing officer's conclusion that Student was eligible for publicly funded private pre-school placement pursuant to Pennsylvania law.

■ The Pennsylvania Early Intervention Services System Act (Act)[8] requires the provision of a FAPE to all eligible children with disabilities ages three through five. The Act defines an eligible young child as:

A child who is younger than the age of beginners and at least three years of age and who meets any of the following criteria:

(1) The child has any of the following physical or mental disabilities: autism/pervasive developmental disorder, serious emotional disturbance, neurological impairment, deafness/hearing impairment, specific learning disability, mental retardation, multihandicap, other health impairment, physical disability,

---

7. We emphasize that the inadequacy of the box checking in determining whether Student is in actual need of specially designed instruction is supported by the fact that that very form, and the IEP team, in no way indicates expressly or impliedly exactly what specially designed instructional needs Student may possess and whether those needs are cognitive and best addressed by a preschool environment, or physical and best addressed by the early intervention services offered by DCIU and rejected by Student. Further, and perhaps even more supportive of our view, the Hearing Officer implicitly acknowledges

the lack of such record evidence in writing: "That *the specially designed instruction has not been defined in the IEP* is a matter that the team must address at the appropriate time". R.R. at 185a (emphasis added). The absence of such evidence within an IEP is not fatal to a finding of eligibility for a student. The absence of such evidence within the entire record as a whole, however, is.

8. Act of December 19, 1990, P.L. 1372, *as amended*, 11 P.S. §§ 875–101—875–503.

speech impairment or blindness/visual impairment.

(2) The child is considered to have a developmental delay, as defined by regulations of the State Board of Education and the standards of the Department of Education.

11 P.S. § 875–103.

▬ Under Pennsylvania law, while a student may be eligible for early intervention services such as those offered in this case by DCIU and rejected by Student, that eligibility does not necessarily require private pre-school attendance at public expense. Pennsylvania defines eligibility for early intervention services differently than eligibility for school-aged students, in that there are no requirements that the child need special education or specially designed instruction. The Chapter 14 of 22 Pa.Code provides that a child with one of a list of disabilities, or a developmental delay, is eligible for intervention services, and no requirement exists regarding the need for specially designed instruction. *Id.* Student clearly meets both criteria, as a child with a physical disability that has caused a developmental delay. As an eligible early intervention student, DCIU is providing Student with exactly what is required by law, namely services that are developmentally appropriate and meet his individual needs. Thus, Pennsylvania law requirements have been fulfilled in this case.

▬ In determining that Pennsylvania early intervention regulations require publicly funded private pre-school placement, the hearing officer misinterpreted the General Assembly's intent. The General Assembly defined eligibility for early intervention to differ from IDEA

eligibility. The early intervention regulations do not require a child to have specially designed instructional needs as a result of his disability, unlike IDEA, and only require that he have a disability and a developmental delay.[9] Similarly, the definition of the mandated least restrictive environment in the Pennsylvania early intervention regulations differs significantly from that of IDEA in that it specifically considers that for a pre-school aged child, home may be the least restrictive environment. 22 Pa.Code § 14.155(b). Consistent with that concept is the fact that neither Federal nor Pennsylvania law mandates a public pre-school program.

Pennsylvania's different definition for eligibility and least restrictive environment can be read as indicative of the General Assembly's intent to exclude publicly funded private pre-school in cases such as this one, where a child's physical disabilities require some early intervention services, but a lack of cognitive disabilities negate the need for publicly funded pre-school attendance.

Accordingly, we reverse.

### ORDER

AND NOW, this 29th day of October, 2002, the order of the Special Education Appeals Panel in the above-captioned matter is hereby reversed.

---

**9.** It is instructive to note that, since changes to Chapter 14 were adopted in June, 2001, the definition of eligibility for early intervention has been changed to conform to that of IDEA.

22 Pa.Code § 14.101. Under that current definition, Student would not be eligible for early intervention services absent a need for specially designed instruction.