IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mt. Lebanon School District,        :
             Petitioner    :
                         :   **CASE SEALED**
        v.            :   No. 922 C.D. 2016
                         :   Argued: June 7, 2017
J.S., by and through his parents  :
H.H. and J.S.,                :
             Respondents  :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT           FILED: November 9, 2017

Mt. Lebanon School District (District) petitions for review of an order of the Gifted Education Hearing Officer (Hearing Officer),[1] which required the District to provide a gifted student with transportation to attend an accelerated mathematics class. For the following reasons, we reverse the Hearing Officer's decision.

The Hearing Officer found the following relevant facts, which the parties do not dispute. J.S. (Student), a seventh-grade student at Mellon Middle

---

[1] The order at issue was entered following a due process hearing pursuant to Section 16.63 of Title 22 of the Pennsylvania Code, 22 Pa. Code §16.63, which provides that an impartial due process hearing concerning the identification, evaluation or educational placement of a gifted student is to be held before a hearing officer. To ensure the hearing is impartial, the hearing officer cannot be a school district or Department of Education employee. 22 Pa. Code §16.63(m)(2). An appeal therefrom is to be taken to a "court of competent jurisdiction." 22 Pa. Code §16.63(*l*).

School, has been identified as "gifted" pursuant to Chapter 16 of Title 22 of the Pennsylvania Code, 22 Pa. Code §§16.1-16.65.[2] Student's Gifted Individualized Education Plan (GIEP)[3] includes a "two year acceleration in mathematics," which allows him to attend a geometry class at Mt. Lebanon High School. Hearing Officer's Adjudication, 5/13/2016, at 3, Finding of Fact No. 6; Reproduced Record at 220 (R.R. ___). The middle school is located approximately 1.3 miles from Student's home. The high school is an additional 0.4 or 0.6 miles away depending on the route taken.

The District is a walking school district, meaning that it does not provide transportation to students except for those who are disabled. Student walks from his home to the middle school with his peers and then walks to the high school for the geometry class, which is held during the first period of the day. The entire walk from Student's home to the high school takes approximately 40 to 45 minutes. The District does not provide transportation for Student from the middle school to the high school. The District does, however, provide transportation for Student from

---

[2] Chapter 16 of the Pennsylvania Code which governs special education defines "gifted student" as:

> (i) A student who is exceptional under section 1371 of the School Code [Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*] (24 P.S.§13-1371) because the student meets the definition of "mentally gifted" in this section, and needs specially designed instruction beyond that required in Chapter 4 (relating to academic standards and assessments).
>
> (ii) The term applies only to students who are of "school age" as defined under §11.12 (relating to school age).

22 Pa. Code §16.1. "Mentally gifted" is further defined as "[o]utstanding intellectual and creative ability the development of which requires specially designed programs or support services, or both, not ordinarily provided in the regular education program." *Id.*

[3] A Gifted Individualized Education Plan is a "written plan describing the education to be provided to a gifted student." 22 Pa. Code §16.31.

the high school back to the middle school after the geometry class, so that he can get to his second period class on time. Student has missed the geometry class a few times "due to special events." *Id.* at 4, Finding of Fact No. 18; R.R. 221. Nevertheless, he received an "A" in the class for each marking period through the end of the third quarter of the 2015-2016 school year.

Student, through his parents, filed a due process complaint against the District asserting that its failure to provide Student with transportation to the high school deprived him of an appropriate education in accordance with his GIEP. Student cited safety concerns as the primary reason the District was responsible for transporting him from the middle school to the high school. Student did not contend, however, that the District should provide him with transportation from his home directly to the high school. The parties proceeded to a hearing before the Hearing Officer and presented testimony and documentary evidence. The parties stipulated that Student's placement in the geometry class is appropriate.

The Hearing Officer ruled in Student's favor and ordered the District to provide transportation for him each morning from the middle school to the high school as part of his GIEP. The Hearing Officer found that "other than a vague sense of unease, [Student's] Parents pointed to nothing concrete to suggest that Student might be unsafe traveling to, or inside, the District high school." *Id*. at 7; R.R. 224. Nevertheless, she concluded that the District is required to provide transportation to Student under Section 1374 of the Public School Code,[4] 24 P.S. §13-1374. In reaching that conclusion, the Hearing Officer relied on *Woodland Hills School District v. Department of Education*, 516 A.2d 875 (Pa. Cmwlth. 1986), where this

---

[4] Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 – 27-2702.

Court stated that a school district is required to provide transportation to exceptional students unless "the distance involved is less than one and one-half mile and is not along a hazardous route." *Id.* at 878 n.9 (citing Section 1362 of the Public School Code, 24 P.S. §13-1362). Because the high school is 1.9 miles from Student's home, the Hearing Officer concluded that the District is obligated to transport him from the middle school to the high school. The District now petitions this Court for review.[5]

On appeal, the District argues that the Hearing Officer erred in its construction of Section 1374 of the Public School Code, 24 P.S. §13-1374. By its plain terms, Section 1374 does not require the District to provide transportation to Student. The District maintains that it has discretion under Section 1361 of the Public School Code, 24 P.S. §13-1361, to decide whether to offer transportation to students. Consistent with that discretion, the District has decided as a matter of policy to be a walking school district. Student offered no evidence that this policy was implemented in an arbitrary or capricious manner. The District argues that the Hearing Officer "effectively made an [injunction] ruling inconsistent with the District's general transportation policy." District Brief at 13. The District further argues that the case at bar is distinguishable from *Woodland Hills* because the school district in that case provided transportation to all students.

Student counters that Sections 1362 and 1374 of the Public School Code, when construed together, require the District to provide transportation to a gifted student who is required to travel more than one and one-half miles to school each day. 24 P.S. §§13-1362, 13-1374. Student acknowledges that *Woodland Hills*

---

[5] Our scope of review is to determine whether the adjudication is supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated. *Punxsutawney Area School District v. Kanouff*, 663 A.2d 831, 834 (Pa. Cmwlth. 1995).

is factually distinguishable but, nevertheless, argues that "the legal question answered … in that matter provides clear direction in the instant case." Student Brief at 11. We disagree.

The object of statutory interpretation is to ascertain the General Assembly's intent and give it effect, 1 Pa. C.S. §1921(a), and the primary indication of legislative intent is the plain language of the statute. *Department of Environmental Protection v. Cumberland Coal*, 102 A.3d 962, 975 (Pa. 2014). Accordingly, we begin with the language of Section 1374 of the Public School Code, which states:

> Any exceptional child, who is regularly enrolled in a special class that is approved by the Department of Education, or who is enrolled in a regular class in which approved educational provisions are made for him, *may be furnished with free transportation by the school district*. When it is not feasible to provide such transportation the board of school directors may in lieu thereof pay for suitable board and lodging for any such child. *If free transportation* or board and lodging *is not furnished for any exceptional child* or any eligible young child as defined in the act of December 19, 1990 (P.L. 1372, No. 212), known as the "Early Intervention Services System Act," who, by reason thereof, is unable to attend the class or center for which he is qualified, *the intermediate unit shall provide the transportation necessary*.

24 P.S. §13-1374 (emphasis added). By using the term "may," rather than "shall," the legislature has indicated that a school district can decide whether to offer free transportation to a gifted child enrolled in an approved class. If a school district elects not to provide free transportation, the "intermediate unit shall provide the transportation necessary." *Id.* Construing Section 1374 as imposing an obligation

5

on a school district to provide free transportation for gifted students conflicts with the plain language of the statute.

Likewise, Section 1362 of the Public School Code does not mandate free transportation. Section 1362 states in pertinent part:

> *The free transportation of pupils*, as required *or authorized* by this act, or any other act, *may be furnished* by using either school conveyances, private conveyances, or electric railways, or other common carriers, when the total distance which any pupil must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one-half (1 ½ ) miles, and when stations or other proper shelters are provided for the use of such pupils where needed, and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, as so certified by the Department of Transportation….

24 P.S. §13-1362 (emphasis added). In short, Section 1362 specifies the means by which a school district *may* furnish free transportation, such as for a gifted student under Section 1374. Contrary to Student's interpretation, Section 1362 does not require a school district to provide transportation to a student who resides more than one and one-half miles from his school. This Court has so held:

> [Section 1362] is a complement to other sections which permit or require the provision of free transportation. Section 1362 does no more than enumerate the means of transportation which a school board may employ under certain circumstances…. [It] does not mandate free bus service[.]

*Abrahams v. Wallenpaupack Area School District*, 422 A.2d 1201, 1204 (Pa. Cmwlth. 1980). Consistent with our holding in *Abrahams*, we conclude that the Hearing Officer erred in construing Sections 1374 and 1362 to mean that a school district must provide free transportation to gifted students.

6

Likewise, the Hearing Officer's reliance on *Woodland Hills*, 516 A.2d 875, was misplaced. In that case, the school district organized a special education program for gifted students in one of its public school buildings and provided transportation to both public and nonpublic school students who attended the program. Subsequently, the district reorganized its program to offer the program in each of its schools and eliminated transportation for the nonpublic school students. In ruling that the school district was required to provide transportation to the nonpublic school students, this Court relied on the fact that the school district had elected to provide midday transportation to all students under Section 1374 of the School Code. Accordingly, "the ultimate responsibility of the intermediate unit to transport exceptional children under Section 1374" was not an issue. *Woodland Hills*, 516 A.2d at 878 n.8.

Here, by contrast, the District is a walking district that does not provide transportation to students unless they are disabled. Therefore, *Woodland Hills* is inapposite. Further, Student offered no evidence that he is physically unable to walk the approximately one-half mile from the middle school to the high school or that the route between the schools is unsafe. Hearing Officer's Adjudication, 5/13/2016, at 7; R.R. 224. As the Hearing Officer found, Student missed a couple of the geometry classes, but this was due to "special events" and not to the lack of transportation. *Id.* at 4, Finding of Fact No. 18; R.R. 221. Notably, the Hearing Officer also found that Student can use the computer lab or participate in sports activities at the middle school until 7:50 a.m. and still have sufficient time to walk to the high school before the first period. *Id.*, Finding of Fact No. 19; R.R. 221.

7

Finally, construing Section 1374 of the School Code as authorizing, but not mandating, a school district to provide free transportation to gifted students is consistent with other provisions of the School Code. Section 1361(1), for example, provides that "[t]he board of school directors in any school district *may*, out of the funds of the district, *provide for the free transportation* of any resident pupil to and from the kindergarten, elementary school, or secondary school in which he is lawfully enrolled…." 24 P.S. §13-1361(1) (emphasis added). This Court has construed this language to mean that "[t]he power granted to school districts under [Section 1361] is plenary, absent a showing of bad faith or abuse of discretion." *Abrahams*, 422 A.2d at 1203 (citing *Roberts v. Board of Directors of the School District of the City of Scranton*, 341 A.2d 475 (Pa. 1975)). Stated otherwise, a court should not interfere with a school board's exercise of the discretion authorized in Section 1361 "unless the action was based on a misconception of law, ignorance through lack of inquiry into the facts necessary for an intelligent judgment, or unless the action is the result of arbitrary will or caprice." *Id.* "The burden of showing such an abuse is a heavy one and rests with the party seeking the injunction." *Id*.

Here, the District, as a matter of policy, has decided to be a walking district, and it has applied this rule uniformly to all students. There is no evidence in the record that the District has implemented this policy in an arbitrary or capricious manner. Accordingly, this Court will not interfere with the District's exercise of its discretion with respect to Student's transportation.

For these reasons, we reverse the Hearing Officer's order.

_____
MARY HANNAH LEAVITT, President Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mt. Lebanon School District,           :
                   Petitioner    :
                                :    **CASE SEALED**
            v.          :    No. 922 C.D. 2016
                                :
J.S., by and through his parents       :
H.H. and J.S.,                         :
              Respondents    :

# **O R D E R**

AND NOW, this 9th day of November, 2017, the order of the Gifted Education Hearing Officer dated May 13, 2016, in the above-captioned matter is hereby REVERSED in accordance with the attached opinion.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mt. Lebanon School District,       :     **CASE SEALED**
           Petitioner       :
                              :
        v.                :
                              :
J.S., by and through his       :
parents H.H. and J.S.,       :    No. 922 C.D. 2016
           Respondents     :    Argued: June 7, 2017

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

CONCURRING AND DISSENTING
OPINION BY JUDGE COSGROVE       FILED: November 9, 2017

I see nothing in *Woodland Hills School District v. Department of Education*, 516 A.2d 875 (Pa. Cmwlth. 1986) that suggests a school district's decision to be a walking district also exempts it from providing transportation to the gifted student under Section 1374 of the Public School Code of 1949.[1] As the Majority stresses that such a distinction exists, I must dissent.

It's tough enough being twelve. Couple that experience with placement of this gifted student in the foreign setting of high school, where age differences alone are super-magnified and all-too-often accompanied by unpleasant interactions

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 13-1374.

with those of the upper-class, and interference with the educational process is quite possible.

It is not clear from this record but is at least inferred that the distance between the lower school and the high school, where this boy must walk without the accompaniment of his peers, is at least an intimidating gauntlet. Indeed, the Hearing Officer noted that the student, J.S., expressed a "vague sense of unease" relative to his walking to the high school for these special classes. See Majority, slip op. at 3. There should be nothing mysterious about a seventh grader having these feelings as he tries to maneuver his way to this unfamiliar venue. Nor does the law require that he actually be bullied before the district is forced to provide transportation to these high-level classes.

There are many "young Sheldons"[2] among us, and the legislature has taken steps to nurture their educational talents while not placing external burdens on them. Finding their abilities to be different from those of others, they are entitled to the full benefit which comes with recognition of those differences.

But I agree with the Majority in one respect. In citing Section 1374, the Majority adds emphasis to the last section: "*If free transportation* [is not provided by the District] ... *the intermediate unit shall provide the transportation necessary."* 24 P.S. § 13-1374 (emphasis added by the Majority, slip op. at 5). In stressing this passage, the Majority recognizes that, while it does not find the Mt. Lebanon School District (Petitioner) responsible for providing the transportation J.S. requests, that transportation must nonetheless be provided by someone, and, as the

---

[2] Young Sheldon is a fictional character from a situation comedy of the same name. He attended high school at age 9. *See* http://www.cbs.com/shows/young-sheldon/about/ (last visited October 27, 2017); *see also* https://en.wikipedia.org/wiki/Young_Sheldon (last edited October 26, 2017).

JMC-2

law notes, this "someone" is the intermediate unit. J.S. may not have prevailed in his effort to have Petitioner transport him, but he is nonetheless entitled to the transportation he seeks. Although I disagree that Petitioner is not responsible, I concur in this portion of the Majority opinion that this responsibility falls to the intermediate unit.

_____
JOSEPH M. COSGROVE, Judge