## Arena v. Plymouth Township School Directors

*A. Benjamin Scirica*, for plaintiffs.

*Ernest E. Heim*, for defendants.

KNIGHT, J., August 12, 1955.—The pleadings, complaint, answer, reply to new matter, stipulation of facts, and final hearing.

### Questions Involved

Was the condemnation of Sunset Lane by the school authority necessary for a public purpose?

Did the school authority condemn more land than was reasonably necessary for its purposes?

Did the school authority abuse its discretionary powers?

Was Sunset Lane a highway open to, or used by, the public and hence not a proper subject for condemnation?

### Findings of Fact

By deed dated April 16, 1930, and recorded in the Office for the Recording of Deeds of Montgomery County, at Norristown in deed book 1105, page 490, Lucia N. R. Crawford conveyed approximately 34 acres of land in Plymouth Township to Franklin P. Gaul and George B. Shearer, Jr., under and subject to certain building restrictions limited to last 25 years from the date of the deed. In subsequent years, Gaul and Shearer sold various parcels of land from this said tract of land fronting on Jolly Road (also known as Mermaid Lane), Germantown Pike and Walton Road (formerly known as North Star Road). The said Gaul and Shearer sold lots according to a plan known as Highfields, under and subject to substan-

tially the same building restrictions as were created by Lucia N. R. Crawford, aforesaid.

On the plan of Highfields, there was laid out a proposed road known as Sunset Lane, 40 feet wide, connecting Jolly Road with Walton Road.

The plan of Highfields showing Sunset Lane was recorded in the Office for the Recording of Deeds at Norristown in deed book 1313, page 562(a).

Gaul and Shearer sold a lot on said plan containing 3.25 acres and fronting on Walton Road a distance of 285 feet to Elizabeth H. Collison under and subject to certain building restrictions and also subject to the following covenant:

"Grantee shall pay the proportionate costs, for front foot for the construction of a 40′ wide road, the center line of which is to commence at a point in the side line of the North Star Road 570′ Northeastwardly from the intersection of the said side line of said road, with the Northeastwardly side line of Germantown Pike, said road to be constructed substantially parallel to Germantown Pike and to connect the North Star Road with the public road leading to Blue Bell, 20′ of the width of said road to pass over the above described land and to be constructed at the request of the owners of a majority of the land abutting on said proposed road."

North Star Road is now known as Walton Road and the road leading to Blue Bell as mentioned in the above covenant is now known as Jolly Road.

By deed dated May 24, 1951, and recorded in deed book 2182, page 426, Elizabeth H. Collison conveyed the premises described in finding no. IV to Biagio Arena and Eleanor Arena, his wife, subject to the covenant set forth in finding no. IV.

By deed dated November 30, 1939, and recorded in deed book 1313, page 559, Gaul and Shearer conveyed a tract containing six and one-half acres situate at the

intersection of Walton Road and the Germantown Turnpike to Florence E. Wood. The parties to this conveyance entered into a written agreement by the terms of which Florence E. Wood agreed upon the request of Gaul and Shearer to dedicate without compensation 20 feet of the right of way or road shown on the plan of Highfields and known as Sunset Lane.

Through the aforesaid Florence E. Wood and other mesne conveyances, commencing January 31, 1940, Biagio Arena acquired title on April 25, 1947, by deed recorded in deed book 1824, page 146, to the tract of land described in paragraph 1 of plaintiffs' complaint subject to the agreement described in finding no. VII.

By deed dated November 9, 1951, and recorded in deed book 2241, page 327, Elizabeth S. MacPherson conveyed to the School District of the Township of Plymouth, a tract of 1.059 acres. This tract abutted on Sunset Lane and was part of the Highfields development.

By deed dated November 5, 1951, and recorded in deed book 2241, page 86, June S. Collins conveyed a tract of land containing 1.020 acres to the school district. This was part of the Highfields tract.

By deed dated December 26, 1951, and recorded in deed book 2241, page 230, Gaul and Shearer conveyed a tract of land containing about 13.380 acres to the school district. This conveyance made specific reference to and including Sunset Lane.

By deed dated January 13, 1953, and recorded in deed book 2343, page 188, the school district conveyed premises mentioned in findings IX, X and XI to the Plymouth Township School District Authority.

As a result of the forgoing transactions, plaintiffs own two tracts fronting on Walton Road, adjoining each other and each containing in front approximately 285 feet and extending of that width in depth 500 feet, where the two tracts abut is the 40-foot right-of-

way called Sunset Lane; on the plan of Highfields the owners of each tract are obligated to dedicate 20 feet if the road is ever opened. The Plymouth Township School District owns approximately 16 acres of land, all part of the Highfields development, and on this 16 acres the authority has built a large modern grade school which it leases to the school district. The school building is built directly over the right-of-way known as Sunset Lane as shown on the Highfields plan. All the properties mentioned in the foregoing findings were subject to building restrictions which expired in April 1955, and the tracts of plaintiffs were subject to the covenants in reference to Sunset Lane described in finding no. IV.

Prior to the condemnation resolution hereinafter mentioned, all the owners of parts of the development known as Highfields, except plaintiffs and Saverio Arena and Anna, his wife, executed releases to the school district and school authority of all their right, title and interest in the building restrictions and also to and in Sunset Lane as shown on the plan of Highfields.

By resolution adopted January 27, 1953, the School Authority condemned a fee simple title to a strip 40.05 feet in width and 500 feet in depth, being Sunset Lane as shown on the plan of Highfields.

During August of 1954, the School Authority caused markers to be placed around the land condemned (finding no. XV), and work was commenced on a five-foot bituminous sidewalk to extend from the school property to Walton Road; this sidewalk was to be built on the center of the condemned strip.

There is a reasonable necessity for an entrance to the school property from Walton Road. Such entrance will be for the convenience of the scholars and will facilitate the administration of the school and the safety of scholars attending the same.

The elimination of Sunset Lane by condemnation or otherwise will cause some damage and inconvenience to these plaintiffs. They have ample land, however, to construct a driveway to the buildings at the rear of their homes over their own ground.

Plaintiffs have offered to give to the school authority a strip along the eastern boundary of their land five feet wide if they are allowed to retain Sunset Lane.

As we see it, the only question now before us is whether there has been a valid condemnation of Sunset Lane. If the condemnation is valid, then all questions as to the rights and liabilities of the parties under the various agreements recited or mentioned in the findings of fact as well as all questions as to the damages to which plaintiffs may be entitled to by reason of the taking, must be resolved by the constitutional method of a jury of view.

Plaintiffs contend in their complaint that the condemnation resolution is invalid for the following reasons:

(*a*) The condemnation is not for a public purpose;

(*b*) The condemnation is not necessary for any public purpose;

(*c*) The condemnation includes more land than is required for proper school purposes;

(*d*) The condemnation represents an abuse of the discretionary power of the school authority.

Reasons (*a*) and (*b*) may be discussed together. The power of a school district or a school authority to condemn and take private property for the essential public purpose of building school facilities is too well established to require the citation of authority. The condemnation of Sunset Lane was effected for the purpose of improving the facilities of the grade school built on Jolly Road and to give an additional means of ingress and egress from and to Walton Road. That

a passageway from the school to Walton Road is reasonably necessary to accommodate the children living in that area is not only shown by the testimony of the witnesses called by defendants but by a witness called by plaintiffs. On page 61 of the notes we find Mr. Butera, for whose opinion on real estate matters we have a high regard, testifying as follows:

"Q. And in your opinion is this right-of-way necessary for them as a passageway for children to walk from Walton Road to the school, to the school buildings?

"A. It would have to be admitted that it is a very desirable thing for children who live in that area, for them, if they live in that area, to have a passageway."

We have no difficulty in finding that the condemnation was for a public purpose and reasonably necessary for that purpose. Hence, there is no merit in reasons (a) and (b). Reasons (c) and (d) may also be considered together, for they involve the exercise of discretion vested in the school district and the school authority. It is the doctrine of all our cases that he who would set aside the legislative act of a school board or a school authority carries a very heavy burden. Defendant school authority condemned a strip 40.05 feet in width, and the plaintiffs contend that this is excessive. At present, defendant school authority intends to build a five foot walk from Walton Road to the school buildings, but the condemned corridor may be used for vehicular traffic in the future. Those charged with selecting sites and building public schools must take a long range view for public schools are not relocated and rebuilt every year. The developers of the Highfields tract laid out Sunset Lane 40 feet wide. If a street this wide was necessary to accommodate the few houses fronting on the lane, certainly it is necessary to accommodate the greater number of

people going to and from the school. School buses, private cars and bicycles used in taking the children to the school using Walton Road could turn into the driveway and thus avoid going on Germantown Pike, a much traveled, arterial highway. The more we can keep school buses off our arterial highways, the greater the convenience to the traveling public and the safety of the school children. We do not think the school authority abused its power in condemning a corridor 40 feet in width from the school building to Walton Road. Without the entrance from Walton Road, children walking or riding bicycles would have to go to the end of Walton Road, thence north on the Germantown Pike to Jolly Road and thence along Jolly Road to the school. This would expose the children to traffic hazards. If the entrance from Walton Road saves the life of one child it is justified. We can find no glaring and obvious abuse of discretion in the actions of the school authority in this case.

Counsel for plaintiffs in their brief advance a novel contention for holding the condemnation proceedings null and void. The Municipality Authorities Act of May 2, 1945, P. L. 382, 52 PS §2900z-12, by the authority of which the Plymouth Township School Authority exists and derives its powers to condemn private property for school purposes, provides, in section 11, "That no property owned or used by . . . the Commonwealth of Pennsylvania, any political sub-division thereof . . . shall be taken under the right of eminent domain". Counsel for the plaintiffs contend that inasmuch as Plymouth Township had a right to accept the dedication of Sunset Lane, it became in effect a public road which could not be condemned. It may be noted that, if counsel for the plaintiffs are right, then Sunset Lane is a public road and the school district and the public have a right to use it without the permission and interference of plaintiffs. We do

not think, however, that the contention of counsel for plaintiffs is sound.

In 1933, when the ancestors in title of plaintiffs sold the lots bounded by a 40 foot street which was definitely located it was a dedication of that street to public use, and further in 1939 when the plan of Highfields was recorded it was a re-affirmation of that dedication: Rahn v. Hess, 378 Pa. 264 (1954).

Although dedicated to public use, Sunset Lane could not become a public thoroughfare until accepted by the public and under the provisions of the Act of May 9, 1889, P. L. 173, this acceptance was effected if Sunset Lane was opened to public use or used by the public within 21 years of the act of dedication. Neither of these events has happened. Sunset Lane has not been physically opened nor has it been opened to public traffic by any action of the Plymouth Township authorities. Sunset Lane has not been used by the public at all. There was evidence that one child during the school year of 1954-55 "cut across the fields" to the school, but other than that there is no evidence of use by the general public.

We think it makes little difference whether the dedication for public use was in 1933 or 1939 for both dates are within 21 years of the condemnation resolution. The mere fact that the township had a right to accept the dedication did not make Sunset Lane a public road for it was never opened to or used by the public. In our opinion the fact that the township and the public had a right, which was never exercised, did not prevent the school authority from condemning the bed of Sunset Lane. Whether the school authority condemned an easement or a fee we do not decide, for this is a question which will arise when the question of damages is disposed of. What we do decide is that the school authority has, by a proper exercise of its right of eminent domain acquired the right to use Sunset

Lane as shown on the plan of Highfields for the purpose of ingress and egress from the school buildings. It follows that the complaint should be dismissed.

## Conclusions of Law

Equity has jurisdiction.

The right of eminent domain was properly exercised by the school authority.

. Plaintiffs are entitled to damages which must be assessed by the statutory method in condemnation cases.

The complaint should be dismissed.

The plaintiffs should pay the costs.

## Decree Nisi

And now, August 12, 1955, it is ordered, adjudged and decreed that the prothonotary mark these findings of fact and conclusions of law filed, to become a part of the record of this case, and enter the following decree nisi:

The bill is dismissed.

Plaintiffs to pay the costs.

Notice to be given by the prothonotary as required by the rules of equity practice, that unless exceptions shall be filed within 20 days from this date, the decree nisi will become the final decree, as of course.

## Opinion Sur Exceptions

KNIGHT, P. J., November 17, 1955.—Plaintiffs have filed nine exceptions to the adjudication filed by the chancellor. Exceptions one and two are to the chancellor's findings of fact XVII and XVIII. These exceptions are not specifically pressed by plaintiffs, and it is sufficient to say that the findings are supported by the evidence.

The third exception will be discussed later in this opinion.

The fourth exception is to the chancellor's conclusion of law that the complaint should be dismissed and the

ninth exception is to the action of the chancellor in dismissing the complaint and placing the costs on plaintiffs.

The fifth, sixth, seventh and eighth exceptions go to the refusal of the chancellor to find certain facts requested by plaintiffs. None of these exceptions were specifically pressed at the argument or by counsel for plaintiffs in his brief.

The substance of all the exceptions, particularly the third exception, is summed up by counsel for plaintiff when he states the questions involved to be:

"A. Has not there been a valid dedication of Sunset Lane on November 30, 1939, thus creating a latent right in the Township of Plymouth to accept it as and for a township road, which said right, under law, cannot be foreclosed by condemnation?

"B. Under any circumstances, has not defendant abused its discretion, and acted arbitrarily and unreasonably so that the condemnation resolution should be declared void?"

Counsel for plaintiffs before the chancellor, at the argument before the court en banc and in his brief argued that inasmuch as Sunset Lane had been dedicated to public use it was, in effect, a public thoroughfare despite the fact that the evidence shows conclusively that it was never accepted by the township authorities or used by the public. It is argued that the public either by user or by the act of its duly constituted authorities could have accepted the dedication at any time within the period of 21 years after the dedication and that, therefore, the public had a latent property right in Sunset Lane when the condemnation resolution was passed and this right could not be taken by the school authority under the right of eminent domain for under the law it had no power to condemn property owned or used by the Commonwealth of Pennsylvania or any of its political subdivisions.

Sunset Lane was never owned or used by the public. What about the latent right? Counsel for defendants has cited two cases and extracted the following quotations from the opinions: "In case of *Philadelphia Museums v. University of Pennsylvania,* 251 Pa. 125 (1915), on page 132, the court said: 'A dedication to public uses does not become binding upon the dedicator until there has been an acceptance on the part of the public. Dedication is the joint effect of the offer of the owner to dedicate land and acceptance of such land by the public. Two parties are necessary,. the owner on one side and the public on the other; there can be no dedication without the participation of both.' In the case of *Com. v. Shoemaker,* 14 Pa. Super. 194 (1900), on page 203, the court said: 'The mere dedication of a street to public use by the owner will not make it a public street unless it is accepted by the public, and until there has been such an acceptance an indictment will not lie for the obstruction of such a street. Such a street may, however, be accepted by public user, without the active intervention of the municipal authorities'."

Sunset Lane was not a public street for it had never been accepted by the municipal authorities or used by the public and the law only prohibits the condemnation of property owned or used by the Commonwealth or one of its political subdivisions.

Counsel for plaintiffs says in his brief:

"It is axiomatic that where a servitude or a duty exists, there must be corresponding rights in other parties".

The converse of this is also true, and where a right exists there must be a corresponding duty. There was certainly no duty on the part of the public to use Sunset Lane and no duty on the part of the supervisors to accept it as a public street. True it might have been opened by legal proceedings, but this is different from

a voluntary acceptance of the street. It would be a vicious thing if municipalities were under a duty to accept as public streets every road laid out in the numerous subdivisions of our county. The Act of May 9, 1889, P. L. 173, 36 PS §1961, was passed for the benefit of the land owner; it neither conferred additional rights on the public or public authority nor did it give an option to public authorities for twenty-one years during which they could accept Sunset Lane as a public street.

As we view it, the action of the owners in laying out Sunset Lane either in 1933 or 1939 was an offer to turn over the lane to public use and could have been withdrawn at any time before it was accepted by public authority or by public user. The act of 1889 was a statute of limitations which put a time limit on any right of the public or public authority to accept the dedication. What we have said applies only to public rights and does not contemplate any private rights conferred by the offer to dedicate.

The Township of Plymouth is not a party to these proceedings and it is asserting no rights in Sunset Lane and it is rather obvious that the township never will.

Plaintiffs also contend that the school authority abused its discretion in passing the condemnation resolution. In discussing this phase of the case, we do not wish to add to what the chancellor has said in his adjudication. Counsel for plaintiffs mentions that the evidence discloses that only one child went to the school via Sunset Lane in the school year 1954-55. One answer to this is that there was no improved path to the school over Sunset Lane; that improvement had been stopped by this proceeding.

And now, November 17, 1955, the exceptions are dismissed and the order of the chancellor of August 12, 1955, shall become the final judgment of the court.