**BOROUGH OF DUNCANSVILLE**

v.

**Richard G. BEARD and Beth Ann Beard, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2006.

Decided March 7, 2007.

Reargument Denied April 25, 2007.

Bradley D. Allison, Bedford, for appellants.

Michael S. Emerick, Duncansville, for appellee.

BEFORE: COLINS, President Judge [1] McGINLEY, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Richard G. Beard and Beth Ann Beard (Beards) appeal an order of the Court of Common Pleas of Blair County (trial court) that overruled and dismissed the preliminary objections the Beards filed to a declaration of taking that the Borough of Duncansville (Borough) filed, which sought to condemn a portion of the Beards' property near the intersection of North Thirteenth Street and Vineyard Lane.

[1]. This matter was assigned to the opinion writer prior to the date when President Judge Colins completed his tenure as president judge.

The issues the Beards raise in this appeal pertain mainly to questions involving the Borough's authority under The Borough Code[2] and the Eminent Domain Code[3] to condemn the Beards' property. The Beards argue that (1) the Borough Code does not authorize the taking; (2) the law does not authorize the stated purpose of the taking; (3) the taking is for a private, rather than public purpose, and therefore is not authorized; (4) the evidence does not support the determination that a safety issue exists; (5) the trial court erred in considering the testimony of a witness the Borough offered as an expert; (6) the Borough failed to join indispensable parties; and (7) the trial court erred in not providing the Beards with an opportunity to present oral argument.

The Borough adds to the mix the question of whether the trial court erred in granting the Beards' motion to appeal nunc pro tunc. This last question could be determinative and accordingly, we will summarize the procedural history that preceded the appeal.

The Borough filed its declaration of taking on June 9, 2004, and the Beards filed their preliminary objections on July 1, 2004. The parties, by agreement, introduced and submitted jointly, as the record in lieu of trial, depositions and exhibits by a praecipe entered on the common pleas's docket on July 28, 2005. The trial court entered an order on July 29, 2005, directing an initial briefing schedule and oral argument to follow the submission of briefs.

The court administrator's office sent a letter to the parties dated September 16, 2005, informing them that oral argument would be conducted before Judge John K. Reilly, Jr., a senior judge, on November 7, 2005. However, by order dated September 30, Judge Thomas G. Peoples, Jr. dismissed the Beards' preliminary objections, without canceling the oral argument that had been scheduled for November. On October 12, 2005, the Beards filed a motion for reconsideration of the trial court's order dismissing the preliminary objections. Judge Reilly set November 7, 2005 as the date for argument on the reconsideration motion. However, on October 20, 2005, Judge Peoples entered an order denying the motion for reconsideration and canceling the argument on the reconsideration motion. The Beards filed an initial Notice of Appeal on November 16, 2005, challenging the order denying reconsideration, and in compliance with an order of Judge Peoples, they filed a statement of matters complained of on appeal on November 30, 2005. Judge Peoples issued his memorandum of law, as required by Pa.R.A.P.1925, on December 12, 2005. On February 13, 2006, this Court quashed the appeal as untimely.

The Beards then filed with the trial court a petition for permission to appeal the September 30, 2005 order nunc pro tunc. The trial court granted the nunc pro tunc petition on May 2, 2006, in an order that directed the Beards to file an appeal within thirty days of the order. The Beards filed the appeal now before us on May 26, 2006.

■ The Borough first raised the question of whether the trial court erred in granting the nunc pro tunc petition in its responsive brief to the court. Because the order granting the Beards' motion to ap-

2. Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. § 45101–48501.

3. Act of June 22, 1964, Sp.Sess., P.L. 84, *as amended*, formerly 26 P.S. §§ 1–1–1–1–903, repealed by Section 5 of the Act of May 4, 2006, P.L.____, Act 2006–34, effective Sept. 1, 2006.

peal nunc pro tunc did not put the Borough out of court, the order was not a final order, and hence, the Borough could not have challenged the order on that basis. The remaining question is whether the Borough should have filed a cross-appeal in order to preserve the issue.

The resolution of that question rests on whether the Borough was an aggrieved party by virtue of the trial court's order. In our Supreme Court's decision in *Hospital & Health System Association of Pennsylvania v. Department of Public Welfare*, 585 Pa. 106, 888 A.2d 601 (2005), that Court, referring to the Official Note accompanying Pa. R.A.P. 511 (relating to cross-appeals), including pertinent decisions, affirmed the notion that an appellee could raise an issue distinct from those an appellant had raised when the appellee had not filed an appeal or a cross-appeal. The cases the Court noted stand for the proposition that an appellee is not required to file a cross-appeal where a lower tribunal ruled against a single issue, when the tribunal's underlying judgment is in favor of the appellee. In this case, the Borough prevailed before the trial court, and in accordance with the Supreme Court's holding and the Official Notes to Rule 511, we conclude that the Borough has properly raised the issue of whether the trial court erred in granting the Beards' petition to appeal nunc pro tunc.

In this regard, the Borough asserts that the trial court erred in granting the nunc pro tunc appeal. Initially, we agree with the Borough's argument that the Beards' filing of an application for reconsideration did not toll the period for filing their appeal. Decisional law clearly supports the proposition that, unless a trial court grants reconsideration under Pa. R.A.P. 1701 within the thirty-day appeal period set forth in Pa. R.A.P. 903(a), a party must file an appeal from a trial court order within that thirty-day period.

However, the trial court agreed with the Beards' argument that confusion flowed as a result of the trial court's entry of successive orders altering the directives of previous orders, and accepted this resulting confusion as a basis for concluding that a breakdown in the courts occurred that excused the Beards' untimely filing of their appeal.

Courts may permit a party to file an appeal nunc pro tunc only where fraud or a breakdown in the court's operations has occurred, or where the appellant, his counsel, or a third party's non-negligent actions have caused a delay in the filing of an appeal. *McClean v. Unemployment Compensation Board of Review*, 908 A.2d 956 (Pa.Cmwlth.2006). In this case, the trial court concluded that the former condition permitted the grant of the motion.

The Borough argues that the trial court erred in concluding that a breakdown in the court occurred such as would support the grant of the appeal nunc pro tunc. The trial court recognized that there had been no breakdown in the court such as the failure properly to serve an order on a party, but that the Beards had reasonably relied upon the trial court's previous direction that it would conduct oral argument, and consequently, they had a justifiable expectation that the court would conduct oral argument, such as to excuse their failure to appeal an order that on its face notified them with certainty that the court had dismissed their preliminary objections.

Research has disclosed no decision that fully supports the trial court's decision. However, in *Department of Transportation, Bureau of Driver Licensing v. Maddesi*, 138 Pa.Cmwlth. 467, 588 A.2d 580, 582 (1991), this Court did affirm a trial

court's decision to grant a motion to appeal nunc pro tunc where the trial court noted that a second notice issued to a driver concerning a point accumulation, that indicated the Department would hold a hearing, sufficiently confused the licensee, thus excusing his failure to appeal a notice he received approximately two weeks before that informed him that the Department had suspended his license. The Court noted:

> In its brief, DOT submits that while the order in which the notices were mailed to the licensee was unfortunate, such order of mailing does not amount to a breakdown in the administrative process so as to justify an appeal *nunc pro tunc* from the notice of suspension. We disagree. In our view, the order in which the notices were mailed, when viewed in conjunction with the contradictory contents of the notices, was sufficiently confusing to constitute a breakdown in the administrative process. Therefore, we hold that the trial court properly exercised its discretion in permitting the licensee to appeal his license suspension *nunc pro tunc.*

Although the Court thereby approved the proposition that the actions of a governmental agency, by the issuance of contradictory notices, could constitute a breakdown in the administrative process, the facts in the present case are distinct. In the present case, the trial court initially informed the Beards that they would be entitled to oral argument. Nevertheless, although the second order dismissing the preliminary objections appeared to definitively dispose of the matter entirely, that order did not specifically refer to the pending oral argument, and thereby left a matter of "housekeeping" unchanged. Based upon these facts, we agree with the trial court that the process created confusion and constituted a breakdown in the operation of the court. Accordingly, we conclude that the trial court did not err in granting the nunc pro tunc appeal, and we will proceed to address the merits of the Beards' appeal.

■ The Beards, relying upon section 1501 of the Code, 53 P.S. § 46501, first assert that the Code does not authorize the taking. Section 1501 provides in pertinent part:

> In the laying out, opening, widening, extending, vacating, grading, or changing the grades or lines of streets ... and for all other purposes authorized by this act, a borough may enter upon, appropriate, injure, or destroy, private lands, property or material, according to the proceedings set forth in the law governing eminent domain.

The Beards assert that this language limits the power of the Borough to take their land, because Vineyard Lane is neither a street——the expression used in Section 1501——nor a roadway, the word used by the Borough in its declaration of taking. Further, the Beards contend, the area the Borough seeks to condemn is a turning radius area on either side of Vineyard Lane. The Beards argue that Vineyard Lane does not fall within the Code's meaning of "street" for the purpose of condemnation.

The Code contains certain definitions that are relevant here:

> (1) "Street" shall mean and include any street, as defined in section 111 of this act, [53 P.S. § 111] either for or intended for public use, and shall include the cartway, sidewalk, gutter, and/or the right of way area, whether or not such street, or any part thereof, is owned in fee by others than the borough. Streets shall be of two classes, opened and unopened.

Initially, we note a preliminary difficulty with the presumption all parties set forth

regarding the legal status of Vineyard Lane, and based upon the reasoning that follows, we will reverse the trial court's decision. We conclude that it has no legal status as a "street." The Beards have pointed to the decision of a trial court in which their neighbors, the Brennemans, sought to have the court determine that they had established a prescriptive easement on Vineyard Lane. The trial court concluded that Vineyard Lane constituted a right of way, or easement, which is "a property interest conferred upon one other than the property owner."[4] *Meixsell v. Ross Township Board of Supervisors*, 154 Pa.Cmwlth. 226, 623 A.2d 429, 431 (1993). In *Meixsell*, the Court criticized a township for seeking to require a landowner to dedicate a right of way as a condition for approval of their proposed subdivision. The Court noted that such a dedication would allow the township to acquire a property interest in the easement without providing compensation to the landowner. *Id.*

For eminent domain purposes, the term "street" must first fall within the definition of Section 111 of the Code, which defines "streets" to include "any street, road, lane, court, cul-de-sac, alley, public way and public square." Although the easement at issue has been given the name Vineyard "Lane," as noted above, such roadways must be "either for or intended for public use." Because Vineyard Lane is an easement, we conclude that Vineyard Lane is not a street under the Code.

Subsection 1701(5) provides no support for the trial court's conclusion. That Section states:

"Opening a street" shall mean and include the construction and grading of a street or portion thereof and the act of physically taking possession of an area or laid-out street for the purpose of making the same usable to the traveling public.

This provision indicates that, when a roadway falls within the definition of "street," the Borough, by virtue of its powers of eminent domain may "open" the "street or portion thereof" and take "possession of an area ... for the purpose of making the same usable to the traveling public." Accordingly, a borough may take part or all of a "street" for the purpose of making the street, or part thereof, usable for public travel. However, in this case, as discussed above, Vineyard Lane is not a street, and therefore, the Borough's action cannot be viewed as the "opening of a street," and the portion of that language referring to the construction or grading of a "portion" of the "street" does not apply.

 In all proceedings for condemnation of property, the United States and Pennsylvania Constitutions authorize takings only when they are for a public use or purpose. Under the unusual circumstances in this case, we conclude that the proposed taking is not for a public use or purpose. The Borough has not sought to condemn the entire easement, but only a portion of it. In this case, the Court perceives the Borough's decision to take only part of the easement known as Vineyard Lane to reflect an attempt to take property for a non-public use. An easement contemplates no purely public use. An easement establishes only the rights of the owner of the property and the person or persons who have a legal interest in the easement. Accordingly, only such neighbors who have such easement rights to travel across the easement, or Vineyard

---

4. The Borough has not offered any reference to the record that would contradict this conclusion.

Lane, may legally do so. The prospect of a partial condemnation of less than the entire easement means that the public will have access to only a portion of Vineyard Lane. The public will have no right to drive on any part of the easement except that portion the Borough has sought to condemn.

Although an entire condemnation of the easement could constitute a public use, because then all property owners on Vineyard Lane, and the entire traveling public would have access to Vineyard Lane by its connection with 13th Street, *Keeling v. Griffin*, 56 Pa. 305 (1868), the condemnation proposed in this case would mean that the unaffected portion of the easement would not be included. Although this Court has held that the simple fact that a request to open a road came from abutting landowners did not make the condemnation for a private, rather than public use, *Borough of Big Run v. Shaw*, 16 Pa. Cmwlth. 623, 330 A.2d 315, 317 (1975), the proposed taking would benefit only those persons who have property located on the easement, and not other members of the general public who might seek to travel upon the easement.

We conclude that the trial court erred in overruling the Beards' preliminary objections, and reverse the trial court's order. Because of this conclusion, we need not address the remaining arguments the Beards have raised.

Judge LEAVITT dissents.

### ORDER

AND NOW, this 7th day of March 2007, the order of the Court of Common Pleas of Blair County is reversed.