IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Perkiomen School District       :
      :    No. 260 C.D. 2018
      v.       :
      :    Argued: December 13, 2018
Dennis M. Giansante and Shirley J.    :
Giansante,       :
      Appellants       :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
      HONORABLE PATRICIA A. McCULLOUGH, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH           FILED: April 10, 2019

Dennis M. Giansante and Shirley J. Giansante (collectively, the Landowners) appeal from the February 15, 2018 order of the Court of Common Pleas of Montgomery County (trial court) overruling the Landowners' preliminary objections to the Upper Perkiomen School District's (District) declaration of taking of a portion of the Landowners' property.


**Facts and Procedural History**

In 2017, the District's Board of Directors announced its intention to construct a new middle school adjacent to the District's existing high school. (Trial court order at 1; Reproduced Record (R.R.) at 11a.) The new middle school would be located near the corner of Montgomery Avenue and 11th Street in Pennsburg Borough. (R.R. at 11a, 14a, 85a.) On June 22, 2017, the District's Board of

Directors passed a resolution authorizing the condemnation of a portion of the Landowners' property for "off-site sidewalk improvements to provide a safe walking route for students" to the planned middle school. (R.R. at 11a.) The Landowners' property is located at 1028 Montgomery Avenue, on the corner of Montgomery Avenue and 11th Street, in Pennsburg Borough. *Id.* While the Landowners' property is situated approximately 1,000 feet from the location of the new middle school, it is across the street from property owned by the District. (R.R. at 85a, 172a.)

The Board of Directors' resolution sought "to obtain the perpetual and uninterrupted obtain [sic] a general public pedestrian easement, a permanent sidewalk easement on, over, across, under and through that 73 square foot portion of [the Landowners'] [p]roperty identified as 'Permanent Sidewalk Easement.'" (R.R. at 11a). The resolution also authorized a "temporary construction easement on, over, across, under and through that certain (177) square foot portion of [the Landowners'] property identified as the 'Temporary Construction Easement.'" *Id.*

On August 22, 2017, the District filed a declaration of taking (Declaration) pursuant to section 302 of the Pennsylvania Eminent Domain Code, 26 Pa.C.S. §302.[1] (R.R. at 5a.) The Declaration sought to obtain a perpetual easement

---

[1] Section 302(a) of the Eminent Domain Code provides as follows:

> (1) Condemnation under the power of condemnation given by law to a condemnor shall be effected only by the filing in court of a declaration of taking with the security required under section 303(a) (relating to security required).

> (2) The title which the condemnor acquires in the property condemned shall pass to the condemnor on the date of the filing, and the condemnor shall be entitled to possession under section 307 (relating to possession, right of entry and payment of compensation).

26 Pa.C.S. §302(a).

of 73 square feet and a temporary easement of 177 square feet. (R.R. at 5a-6a.) The Declaration stated that the purpose of the condemnation was to acquire a perpetual easement in order to install a sidewalk for use by the school and the general public. (R.R. at 6a.) The plans attached to the Declaration indicated that the permanent sidewalk easement would **widen an already existing sidewalk that fronts the Landowners' property**. (R.R. at 14a, 16a.) The plans also showed a temporary construction easement of 10 ½ by 17 ½ feet into Landowners' yard. (R.R. at 18a, 20a.)

On September 12, 2017, the Landowners filed preliminary objections to the Declaration pursuant to section 306 of the Eminent Domain Code, 26 Pa.C.S. §306.[2] The preliminary objections alleged that the District did not have the authority

---

[2] Section 306(a) of the Eminent Domain Code provides the following:

**(a) Filing and exclusive method of challenging certain matters**.-

(1) Within 30 days after being served with notice of condemnation, the condemnee may file preliminary objections to the declaration of taking.

(2) The court upon cause shown may extend the time for filing preliminary objections.

(3) Preliminary objections shall be limited to and shall be the exclusive method of challenging:

(i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.

(ii) The sufficiency of the security.

(iii) The declaration of taking.

**(Footnote continued on next page…)**

3

to condemn a portion of the Landowners' property. Specifically, the preliminary objections averred that the District could only condemn property for a "proper school purpose,"[3] such as buildings, playgrounds, and parking lots, and that a "proper school purpose" did not include a part of a sidewalk and temporary construction easement approximately 1,000 feet away from the new middle school. (R.R. at 85a.) Attached to the preliminary objections was a plan showing the Landowners' property in relation to the new school. (R.R. at 125a.) The preliminary objections also asserted that the District failed to provide sufficient security and notice of the Declaration.

The District responded to the Landowners' preliminary objections on October 2, 2017. The District denied that the new middle school would be located 1,000 feet from the Landowners' property, alleging that the Landowners' property was directly across the street from the District's "frontage," which was in the vicinity of the new middle school.[4] (R.R. at 172a.) The District also asserted that it had the

---

**(continued…)**

> (iv) Any other procedure followed by
> the condemnor.

26 Pa.C.S. §306(a). This Court has explained that "[p]reliminary objections filed pursuant to . . . the Eminent Domain Code . . . serve a different function than those filed in other civil actions. They are the exclusive method for resolving challenges to the power or right of the condemnor to appropriate the condemned property . . . ." *Beaver Falls Municipal Authority ex rel. Penndale Water Line Extension v. Beaver Falls Municipal Authority*, 960 A.2d 933, 936 (Pa. Cmwlth. 2008).

[3] Section 703 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §7-703, provides that school districts may condemn land for "proper school purposes." This statute will be discussed in greater detail in the discussion section of this opinion.

[4] The District owns the property on the opposite side of Montgomery Avenue, directly across the street from the Landowners' property. (R.R. at 14a, 172a.) The District utilizes said property for a baseball/softball field. (R.R. at 125a.)

4

authority to condemn the Landowners' property in order to construct a safe walking route to the new middle school. (R.R. at 176a, 180a-81a.)

On February 15, 2018, the trial court overruled the Landowners' preliminary objections. The trial court explained that although the Landowners opposed the condemnation of their property, they "cited no authority directly, or even indirectly, holding that building a sidewalk to a school is not a proper school purpose, instead simply observing that the statutes authorizing the condemnation of property by schools nowhere used the words 'sidewalks' or 'temporary construction easement.'" (Trial court order at 1-2.) The trial court noted the District's assertion that the Pennsylvania Department of Transportation (PennDOT) had determined the existing walking route to the new middle school was hazardous and that, if the District did not construct the sidewalk to provide a safe walking route, all students would have to be bused to the new middle school.[5] (Trial court order at 2.)

## Discussion

On appeal,[6] the Landowners argue that the trial court erred by concluding that the District has the authority to permanently condemn a 73-square-foot portion of the Landowners' property and temporarily condemn a 177-square-foot portion of their property in order to increase the width of an existing sidewalk that is located over 800 feet from the new middle school that the District is building.

---

[5] Although the District asserted that PennDOT certified the route as hazardous, it failed to present evidence of any such certification by PennDOT before the trial court.

[6] "Our review of a trial court's decision to sustain or overrule preliminary objections to a declaration of taking in an eminent domain case is limited to determining whether the trial court abused its discretion or committed an error of law." *Beaver Falls Municipal Authority*, 960 A.2d at 936.

The Landowners argue that a school district's eminent domain power should be strictly construed. They argue that the District lacks the authority under the Public School Code of 1949 (School Code)[7] to condemn their property to widen a sidewalk. In particular, the Landowners contend that the School Code does not mention either sidewalks or temporary construction easements. They assert that building a sidewalk for and/or expanding a sidewalk to a school is not a "proper school purpose" as defined by the School Code.

The Landowners also maintain that the trial court erred in construing section 1362 of the School Code, 24 P.S. §13-1362, which concerns the free transportation of students, as providing authority for the District to condemn a portion of the Landowners' property to widen an existing sidewalk.[8] The Landowners argue that even if the walking route to the school were dangerous, the fact that students would have to be bused to school does not translate into a power to condemn their property to build and/or expand a sidewalk. They also argue that there is nothing in the record to show that PennDOT has certified that the current walking route near the site of the new middle school is hazardous.

The Landowners further contend that although section 703 of the School Code, 24 P.S. §7-703, permits school districts to condemn property for "proper school purposes," this does not allow the District to condemn property to construct or expand a sidewalk 800 to 1,000 feet from the school. The Landowners caution that permitting the District to condemn their property for a sidewalk would result in a limitless expansion of a school district's eminent domain power. The Landowners

---

[7] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101—27-2702.

[8] At oral argument on December 13, 2018, the Landowners' counsel noted that the condemnation would increase the width of the current four-foot-wide sidewalk by one foot.

assert that a school district's eminent domain power is limited to acquiring property for school buildings, playgrounds, and parking lots.

Finally, the Landowners argue that the District **exceeded its authority** by filing a Declaration to acquire a permanent sidewalk for use by the school and **general public**. Examining the language of the School Code, the Landowners contend that the District is **not permitted to condemn land for a public purpose**, but may **only** condemn property for a **school purpose** and, specifically, that the District cannot condemn land to expand a sidewalk for a public purpose. The Landowners assert that in order to condemn property for a public purpose, the District was required to have Pennsburg Borough exercise its authority to do so since the District lacked the power to condemn the property for such purpose on its own. In other words, it is a borough and not a school district that has express authority to condemn land for a public purpose.

In contrast, the District argues that it has the authority to condemn the Landowners' property. It claims that section 703 of the School Code allows school districts to condemn property "for proper school purposes" and, accordingly, allows it to condemn the Landowners' property for use as a sidewalk. It also argues that section 1362 of the School Code requires school districts to provide a safe walking route to the school for students living within 1 ½ miles from the school and that, therefore, constructing a sidewalk to the school is a proper school purpose. While the Landowners' property, here, is located much closer to the new middle school than 1 ½ miles, the District's statutory construction argument has broad implications regarding the extent of a school district's condemnation power. The District asserts that PennDOT has found that the existing walking route to the school is dangerous and that this necessitates condemning part of the Landowners' property for a sidewalk.

The District also contends that the Landowners' interpretation of "proper school purpose" is too narrow and cites to *In re School District of Pittsburgh, Allegheny County*, 244 A.2d 42 (Pa. 1968), as an example of section 703 of the School Code being interpreted broadly. The District claims there are many proper school purposes beyond those that are specifically identified in the School Code.

A school district's eminent domain power derives from section 703 of the School Code, titled, "**Acquisition of buildings, sites for school buildings and playgrounds and disposing thereof**," and provides as follows:

> In order to comply with the provisions of this act, and subject to the conditions thereof, **the board of school directors of each district is hereby vested with the necessary power and authority to acquire, in the name of the district, by** purchase, lease, gift, devise, agreement, **condemnation**, or otherwise, any and all schools and real estate, either vacant or occupied, including lands theretofore occupied by streets and alleys which have been vacated by municipal authorities, and to acquire by purchase, lease, gift or devise, other buildings approved for school use by the Department of Education as the board of school directors may deem necessary to furnish school buildings **or other suitable sites for proper school purposes** for said district or to enlarge the grounds of any school property held by such district, and to sell, convey, transfer, dispose of, or abandon the same, or any part thereof, as the board of school directors may determine. Approval of the Department of Education shall not be required for school buildings and playgrounds on any school construction project for which State reimbursement is not requested.

24 P.S. §7-703 (emphasis added). There is limited case law interpreting section 703 of the School Code. However, in *In re School District of Pittsburgh*, 244 A.2d at 44, our Supreme Court analyzed the meaning of "proper school purpose" under section 703 of the School Code. In that case, the school board filed a declaration of taking to condemn property for the "purpose of providing necessary, useful and convenient

8

parking facilities for school district employees and visitors to the School Administration Building." *Id.* at 43. The landowners argued that the school board's eminent domain powers did not extend to the acquisition of property for parking facilities for administrative employees. *Id.*

In interpreting section 703 of the School Code, the Court noted that although "provisions conferring the power of eminent domain must be strictly construed," strict construction did not require that a statute be "construed as narrowly as possible or that it be construed so literally and without common sense that its obvious intent is frustrated." *Id.* at 44. The Court explained that section 703 of the School Code allowed the school board to acquire real estate "for proper school purposes" either by condemnation, purchase, lease, gift, devise, agreement, or otherwise. *Id.* The Court reasoned that if the school board could not condemn real estate to use it as a parking lot, then it also could not lease, purchase, or otherwise acquire real estate for parking purposes. *Id.*

In deciding whether the General Assembly intended to deny the school board the power to condemn property for administrative parking spaces, the Court found it "significant that the phrase 'proper school purposes' in [s]ection 703 of the [School Code] replaced the phrase 'school buildings and playgrounds,'" in the preceding public school code. *Id.* The Court determined that "[t]his substitution, fairly read, not only left the [school b]oard's power less precisely defined, but also broadened it somewhat." *Id.* Accordingly, the Court concluded that "the acquisition of a building to be used solely for administration undoubtedly [was] for a proper school purpose[,] although an administration building may not be unquestionably within the term 'school[]building,' which could be read to imply a school house where classes are held." *Id.* Similarly, the Court held that "the acquisition of land for off street parking [for school district facilities], which is a practical necessity to the

9

effective and efficient operation of a school system, is certainly a 'proper school purpose.'"[9] *Id.* at 45.

The District, here, relies on section 1362 of the Code, which appears to be facially inapplicable as it is titled, "**Kinds of transportation; liability insurance**." Nonetheless, the District argues that constructing a sidewalk to the school is a "proper school purpose," because the statute requires it to either (1) provide a non-hazardous walking route to students living within 1 ½ miles of a school or (2) bus those students to school. Pursuant to section 1362 of the Code,

> The free transportation of pupils, as required or authorized by this act, or any other act, **may** be furnished by using either school conveyances, private conveyances, or electric railways, or other common carriers, when the total distance which any pupil must travel by the public highway to or from school, in addition to such transportation, does not exceed one and one-half (1 ½) miles, and when stations or other proper shelters are provided for the use of such pupils where needed, and when the highway, road, or traffic conditions are not such that walking constitutes a hazard to the safety of the child, as so certified by [PennDOT]. [PennDOT] shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall

---

[9] Pennsylvania appellate courts have never addressed whether a school district may condemn a property in order to construct a sidewalk to a school. In *Arena v. Plymouth Township School Directors*, 6 Pa. D. & C.2d 712 (1955), discussed by the District in its brief, the Court of Common Pleas of Montgomery County decided a similar issue. 6 Pa. D. & C.2d at 716. In *Arena*, the Plymouth Township School District sought to condemn a section of a landowner's property in order to, *inter alia*, construct a sidewalk between the elementary school and a public road. *Id.* The court of common pleas determined that a passageway from the school was "reasonably necessary to accommodate the children living in that area." *Id.* at 718. In fact, the court noted that if the property were not condemned, children would be exposed to traffic hazards and that if the condemnation "save[d] the life of one child it [was] justified." *Id.* Therefore, the court concluded the condemnation was for a proper purpose. *Id.* However, court of common pleas decisions are not binding on this Court. *See In re Funds in Possession of Conemaugh Township Supervisors*, 724 A.2d 990, 994 (Pa. Cmwlth. 1999), *aff'd*, 753 A.2d 788 (Pa. 2000).

10

consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils. All private motor vehicles employed in transporting pupils for hire shall be adequately covered by public liability insurance in such amount as the board of school directors shall require.

24 P.S. §13-1362 (emphasis added). However, the Supreme Court viewed section 1362 as proscribing the limitation on the distance a student could be required to walk to a bus stop. It held that under section 1362 of the School Code, where a school district decides to provide free transportation to students, students cannot be required to walk more than 1 ½ miles from their residence to a bus stop. *Watts v. Manheim Township School District*, 121 A.3d 964, 970, 976 (Pa. 2015) (Pursuant to section 1362 of the School Code, "students cannot be required to travel more than 1 ½ miles from their residence to the bus stop.").

Moreover, in *Abrahams v. Wallenpaupack Area School District*, 422 A.2d 1201 (Pa. Cmwlth. 1980), this Court held,

> To construe section 1362 itself as imposing any obligation on a school board would require us to ignore the word, "may." This section of the Public School Code is a complement to other sections which permit or require the free provision of free transportation. **Section 1362 does no more than enumerate the means of transportation which a school board may employ under certain circumstances**. In sum, section 1362 does not mandate free bus service on the interior roads . . . . Furthermore, even if the "hazard" clause of section 1362 did create such a duty, that duty would not arise unless the hazard was certified by the Department of Transportation. **There has been no such certification in this case**.

*Id.* at 1204 (emphasis added).

In considering the issue of funding to be received by schools for transportation of students to and from home, this Court, in another case, relied on section 1362 to establish that school districts are "not reimbursed for the transportation costs of a student who resides within one and one-half (1 ½) miles of his/her school provided that student has access to a [school d]istrict proposed walking route certified by [PennDOT] as non-hazardous." *Quasti v. North Penn–School District*, 907 A.2d 42, 43-44 (Pa. Cmwlth. 2006) (citing 24 P.S. §13-1362). In other words, if PennDOT certified a walking route within 1 ½ miles of a school as non-hazardous, the district would not be reimbursed for transportation costs. Yet, in light of the Supreme Court's subsequent interpretation of section 1362 in *Watts,* and contrary to the District's assertion, section 1362 of the School Code does not expressly require school districts to provide a safe walking route with sidewalks to school for students living within 1 ½ miles of their school and, thus, provides limited support for the District's argument.[10]

---

[10] We note that section 2541 of the School Code, titled, "**Payments on account of pupil transportation**," provides, in relevant part, as follows:

> (a) School districts **shall be paid** by the Commonwealth for every school year on account of pupil transportation . . .

> (b) Such payments for pupil transportation shall be made in the following cases:

> (1) To school districts of the fourth class and districts of the third class . . . for the transportation of elementary school pupils . . . who reside one and one-half (1 ½ ) miles or more from the school to which they are assigned or who reside in areas where the road or traffic conditions are such that walking constitutes a hazard to the safety of the child when so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety

**(Footnote continued on next page…)**

(continued…)

factors in making its determination as to whether or not walking constitutes a hazard to pupils.

(2) To school districts of the fourth class and districts of the third class . . . for the transportation of any child living more than two (2) miles by the nearest public highway from the nearest school in session, or any child who resides in an area where the road or traffic conditions are such that walking constitutes a hazard to the safety of the child when so certified by the Bureau of Traffic Safety, and to districts of the third class operating schools jointly with districts of the fourth class or with other districts of the third class entitled to payment on account of transportation for the transportation of any child living more than two (2) miles by the nearest public highway from the nearest jointly operated school in session offering the proper grades including pupils who are attending area technical schools or any child who resides in an area where the road or traffic conditions are such that walking constitutes a hazard to the safety of the child when so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils.
. . .

(4) To all third and fourth class school districts, for pupils transported . . . living one and one-half miles or more from the school of attendance or residing in areas where the road or traffic conditions are such that walking constitutes a hazard to the safety of the child when so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils. . . .

. . .

(c) Payments for pupil transportation on account of the school year 1979-1980 and every school year thereafter shall be made only in the following cases:

**(Footnote continued on next page…)**

**(continued…)**

(1) To all school districts for the transportation to and from school of elementary school pupils, including kindergarten pupils, residing one and one-half (1 ½ ) miles or more by the nearest public highway from the school in which the pupils are enrolled and to which transportation is authorized under section 1361 of this act or residing in areas where the road or traffic conditions are such that walking constitutes a hazard to the safety of the child when so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils. . . .

(2) To all school districts for the transportation to and from school of secondary school pupils residing two (2) miles or more by the nearest public highway from the school in which the pupils are enrolled and to which transportation is authorized under section 1361 of this act or residing in areas where the road or traffic conditions are such that walking constitutes a hazard to the safety of the child when so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils. . . .

(3) To all school districts for pupils transported to and from approved consolidated schools or approved joint consolidated schools living one and one-half (1 ½ ) miles or more from the school of attendance or residing in areas where the road or traffic conditions are such that walking constitutes a hazard to the safety of the child when so certified by the Department of Transportation. The Department of Transportation shall take into account the presence of sidewalks along the highway, but such presence or lack thereof shall not be controlling and the department shall consider all relevant safety factors in making its determination as to whether or not walking constitutes a hazard to pupils. . . .

24 P.S. §25-2541 (emphasis added).

Therefore, the Department of Education shall reimburse certain school districts for the transportation of students living **1 ½ miles or more from their school** or residing in areas where **(Footnote continued on next page…)**

14

As noted above, section 703 of the School Code does not include sidewalks as a type of use for which school districts are permitted to acquire property pursuant to their condemnation power and no Pennsylvania appellate court has ever addressed the issue. In contrast, the Landowners argue that in considering the location of their property, the Borough of Pennsburg, rather than the District, has the authority to condemn property for sidewalks.

As the Landowners emphasize, while school districts do not have express authority to condemn property for sidewalks, boroughs do have such authority. By way of analogy, in *In re Heidelberg Township for Footpath, Alleyway & Bridge Purposes*, 428 A.2d 282 (Pa. Cmwlth. 1981), we examined a second class township's condemnation authority with regard to sidewalks. There, a second class township sought to condemn property for the purpose of constructing a footpath and alleyway for use by school children walking to a school located in the township. *Id.* at 284. The property owners argued that the township lacked the authority to condemn property for the purpose of establishing a footpath. *Id.* at 285. While we

---

**(continued…)**

the road or traffic conditions are such that walking constitutes a hazard to the safety of the child when so certified by PennDOT. While PennDOT shall take into consideration the presence of sidewalks along the highway, such shall not be controlling. *Id.*; *see also* Department of Education—Department of Transportation's Bureau of Traffic Safety—School Districts—The School Code—Fee Transportation—Hazardous Walking Routes, 1978 Pa. Op. Atty. Gen. 97 (Pa. A.G. 1978) (relying on sections 1362 and 2541 of the School Code to conclude that where a school district provides free transportation to school, students living within 1 ½ miles of their school may be required to walk to school and students may be required to walk up to 1 ½ miles from their home to a bus stop, but only if the route is non-hazardous. Further, although the School Code does not require that free transportation be extended generally to students living within 1 ½ miles of the school, considerations of safety require school directors to provide the same to students living within 1 ½ miles of the school if the students would have to walk along a hazardous walking route). Here, however, the District has not indicated the particular class or type of its school district, nor is there any certification in the record regarding a hazardous route.

15

noted that the power to condemn property for a footpath was not expressly granted by the Second Class Township Code,[11] we concluded that it was fairly implied since the Second Class Township Code, as it was written at that time, permitted townships to construct sidewalks and footpaths whenever it was determined that a sidewalk and footpath were necessary for the protection of the traveling public, meaning that a highway was dangerous and such danger could be reduced by building a sidewalk or footpath. *Id.*[12] We held that based on the **express grant of power to construct sidewalks**, "the legislature necessarily implied a grant of the power to condemn for

_____

[11] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§65101-68701.

[12] Section 2401 of the Second Class Township Code currently provides,

> The board of supervisors may by ordinance regulate the line, grade and width of curbs, sidewalks or footpaths constructed along the roads or highways in the township, shall have general supervision over them and may establish a grade or grades for curbs, sidewalks or footpaths, which grade or grades may be separate and apart from the grade or grades established for the cartway or roadway.

53 P.S. §67401. Section 2401 also provides,

> When the board of supervisors establishes that any part of any road or highway is dangerous to the traveling public and the danger could be materially reduced or lessened by the construction of a sidewalk, curb or footpath, the board of supervisors may lay out and construct a sidewalk, curb or footpath along the dangerous portion of the road or highway at township expense.

*Id.* Moreover, section 2312 of the Second Class Township Code currently provides in relevant part, as follows:

> Any township may acquire, by purchase or by the right of eminent domain, any property and lands along or adjacent to any township road that may be necessary to eliminate dangerous curves and widen roads and provide a free and unobstructed view over lands . . . for the better protection and safety to the traveling public.

53 P.S. §67312.

16

sidewalks and footpaths because such power often is needed to fulfill the [t]ownship's specifically authorized purposes" and the township had determined that the construction of a footpath was necessary for the protection of the traveling public. *Id.* at 285-86.

Similarly, here, the Borough Code[13] provides Pennsburg Borough, the municipality in which the Landowners' property is located, the authority to construct and condemn property for sidewalks. Under the Borough Code,

> A borough may enter upon, appropriate, injure or destroy private lands, property or material, or lands previously granted or dedicated to public use that are no longer used for the purpose for which the lands were granted, according to the proceedings set forth in 26 Pa.C.S. (relating to eminent domain), for any of the following purposes:
>
> > (1) The laying out, opening, widening, extending, vacating, grading or changing the grades or lines of streets. . . .

Section 1501 of the Borough Code, 8 Pa.C.S. §1501. Further, section 1801 of the Borough Code provides,

> (1) Any borough may, by ordinance, lay out and establish **sidewalks, curbs**, gutters and surface water drains along any street and, with the consent of the Secretary of Transportation, along any State highway.
>
> (2) The **borough may also require owners of property abutting on any street or State highway to grade, construct, drain, pave and repave the sidewalk, curb or gutter and keep them in repair and in safe and usable condition** along the property at the grades and under the regulations and specifications as council may prescribe.

---

[13] 8 Pa.C.S. §§101-3501.

8 Pa.C.S. §1801 (emphasis added).[14]  Under section 1802 of the Borough Code,

> Any borough may, by ordinance, **lay out sidewalks**, gutters and surface water drains upon land abutting the sides of State highways and upon land abutting the sides of public roads, where the roads are outside the borough limits, but the land upon which the sidewalks, gutters and surface water drains are to be laid out is within the borough limits.

8 Pa.C.S. §1802 (emphasis added).  Also, pursuant to section 1803, "Any borough may establish a grade or grades for **sidewalks**, which may be separate and apart from the grade or grades established for the cartway or roadway," and a "borough may pay all or any part of the cost and expenses of grading and curbing a sidewalk."  Sections 1803-1804 of the Borough Code, 8 Pa.C.S. §§1803-1804 (emphasis added).

Additionally, where a property owner fails to comply with any of the sidewalk provisions of the Borough Code, a "borough may, after notice, cause the grading, paving, repairing, curbing and guttering to be done at the expense of the owner" and "may collect the cost of the work and an additional 10% of the cost, together with all charges and expenses, from the owner and may file a municipal claim for the amounts or collect the amounts by action in assumpsit."  Section 1805 of the Borough Code, 8 Pa.C.S. §1805.  Moreover, under section 1806 of the Borough Code,

> [A]ny borough shall have **power to make emergency repairs to any sidewalks** within the borough if an

---

[14] While Chapter 15 of the Borough Code does not define streets, Chapter 17 of the Borough Code defines streets to include "a street, road, lane, court, cul-de-sac, alley, public way and public square, either for or intended for public use, and includes the cartway, **sidewalk**, gutter, and the right-of-way area, whether or not the street or a part of the street is owned in fee by others than the borough."  8 Pa.C.S. §1701 (emphasis added).  However, section 1701 of the Borough Code notes that this definition of street only applies to Chapter 17 of the Borough Code.  8 Pa.C.S. §1701.

inspection of the sidewalk discloses that, and a certificate made by the officer or head of the department or committee lawfully having charge of sidewalk repairs specifies that, a dangerous condition exists that can be repaired by an expenditure of not more than $1,000.

. . .

Upon the completion of the work, the **cost shall be a charge against the owner of the property and shall be a lien**, until paid, upon the abutting property if a claim is filed. The charge may also be collected by action of assumpsit.

8 Pa.C.S. §1806 (emphasis added).

In short, the Borough Code provides an extensive statutory framework regarding a borough's authority to construct and regulate sidewalks. Boroughs have the power to lay out and establish sidewalks, and may require property owners abutting streets to construct and repair sidewalks. Boroughs are also authorized to expend funds to construct sidewalks, to make emergency repairs to sidewalks, and to charge property owners for sidewalk repairs, which shall be a lien on the property until paid. Further, section 1501 of the Borough Code provides that a borough may exercise its eminent domain power for the purpose of "[t]he laying out, opening, widening, extending, vacating, grading or changing the grades or lines of streets." 8 Pa.C.S. §1501. A different section of the Borough Code defines streets as including sidewalks. *See* section 1701 of the Borough Code, 8 Pa.C.S. §1701. In *Ducansville v. Beard*, 919 A.2d 327 (Pa. Cmwlth. 2007), an eminent domain case, this Court noted that under the previous version of the Borough Code, boroughs were authorized to condemn land for "streets," and that streets were defined to include sidewalks. *Id.* at 331.

19

Based on the language in the Borough Code authorizing boroughs to condemn land for streets and to construct sidewalks, as well as our precedent from *In re Heidelberg Township*, which interpreted a similar statutory framework, it is undisputable that a borough may condemn land to construct a sidewalk. While the Borough Code provides clear statutory authority for boroughs to construct, regulate, and condemn sidewalks, there is no corresponding language in the School Code providing school districts authority over sidewalks. Although the District requests that we interpret section 703 of the School Code as authorizing it to condemn property for sidewalks, unlike the Borough Code, which provides considerable detail about the actions boroughs may take to construct and fund sidewalks, there is nothing in the School Code regulating sidewalks. The District seeks to condemn property for a sidewalk, but the School Code is silent with respect to whether a school district is authorized to even construct sidewalks, let alone make determinations about sidewalk layout, grading, paving, curbing, repairs, costs, or liens.

Section 1928 of the Statutory Construction Act of 1972 provides that provisions of a statute conferring the power of eminent domain shall be strictly construed. 1 Pa.C.S. §1928. Relying on the Statutory Construction Act, our Supreme Court has held that "[b]ecause eminent domain is in derogation of private rights, any legislative authority for its use must be strictly construed in favor of the landowner." *Reading Area Water Authority v. Schuylkill River Greenway Association*, 100 A.3d 572, 579 (Pa. 2014); *see also In re Heidelberg Township*, 428 A.2d at 285 (holding that the "exercise of the power of eminent domain is necessary in derogation of the right to hold property and that the authority to exercise that power should be strictly construed"); *Golding v. New Britain Township*, 382 A.2d 509, 511 (Pa. Cmwlth. 1978) (same). Further, "[A] fundamental principle of statutory construction is that, where a section of a statute contains a given provision, the omission of that provision from a similar section is significant to show a different intention existed." *Corley v.*

20

*Pennsylvania Board of Probation and Parole*, 478 A.2d 146, 149 (Pa. Cmwlth. 1984); *see also* Section 1921 of the Statutory Construction Act, 1 Pa.C.S. §1921 ("When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters . . . other statutes upon the same or similar subjects.").

Although in *In re School District of Pittsburgh*, 244 A.2d at 44, our Supreme Court noted that section 703 of the School Code should not be interpreted so narrowly as to frustrate its obvious intent, there is nothing in section 703 exhibiting an obvious intent to allow school districts to condemn property for sidewalks or walking routes. Because the rules of statutory construction mandate that statutes conferring eminent domain powers be strictly construed and there is no real mention of sidewalks in section 703 or any other provision of the School Code, we conclude that the construction of sidewalks is not a proper school purpose for which a school district has the authority to condemn property.

The District argues that it has the power to condemn lands for school walking routes up to 1 ½ miles from a school. Irrespective of the fact that section 1362 of the School Code, as interpreted by our Supreme Court, does not provide support for such a position, the District's argument has such broad implications vis-à-vis a school district's condemnation powers that it contravenes the rule that we construe eminent domain statutes narrowly. Further, the decision of the General Assembly to include several statutes within the Borough Code regulating sidewalks, while not including any similar provisions in the School Code, demonstrates that the General Assembly did not intend for school districts to have a role in either constructing or condemning land for sidewalks. For example, were we to otherwise determine that section 703 of the School Code permits a school district to condemn land for a sidewalk, there would be no mechanism in the School Code for a school district to make decisions related to the construction, funding, or ongoing

21

maintenance of the sidewalks. In contrast, the Borough Code allows for a borough to impose costs and ongoing maintenance to the property owners. The lack of any statutory provisions in the School Code related to sidewalks, when compared to the Borough Code, which does contain such provisions, provides strong evidence that the General Assembly did not intend to authorize school districts to construct sidewalks.

Although we conclude that the District lacks the authority to condemn land for a sidewalk, under the Borough Code, Pennsburg Borough does possess the authority to condemn property to construct a sidewalk for the walking route to the new middle school.

## Conclusion

Accordingly, because the construction of a sidewalk is not a proper school purpose for which a school district may condemn property, we reverse the trial court's order overruling the Landowners' preliminary objections to the District's declaration of taking.

_____
PATRICIA A. McCULLOUGH, Judge

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Upper Perkiomen School District      :
                                        :   No. 260 C.D. 2018
           v.                   :
                                          :

Dennis M. Giansante and Shirley J.  :
Giansante,                             :
               Appellants        :

## ***ORDER***

AND NOW, this 10th day of April, 2019, the order of the Court of Common Pleas of Montgomery County, dated February 15, 2018, is reversed.

_____
PATRICIA A. McCULLOUGH, Judge